STATE, Respondent, vs. MIER, Appellant.

*January 16—February 17, 1948.*

222

For the appellant there was a brief by *Charles Swidler* and *Henry C. Wagner,* attorneys, and *A. W. Richter* of counsel, all of Milwaukee, and oral argument by *Mr. Richter.*

For the respondent there was a brief by the *Attorney General, William J. McCauley,* district attorney of Milwaukee county, and *Joseph E. Tierney,* deputy district attorney, and oral argument by *Mr. Tierney.*

BARLOW, J. Two questions are raised on this appeal. The first is as to the sufficiency of the evidence offered on the application for a search warrant of the premises to constitute probable cause for the issuance of the search warrant which was issued the day prior to the arrest. The second question is whether the possession of incomplete baseball-pool tickets is sufficient to justify a conviction for violation of sec. 348.01, Stats. Proper and timely motions to suppress the evidence obtained by the search warrant were made before and at each trial.

Charles Gardner, a police officer of the city of Milwaukee, made application for the search warrant, describing the premises, and after being duly sworn testified as follows:

"*Q.* Upon what do you base your application? *A.* On Tuesday, September 10, 1946, between the hours of 3 p.m. and 4 p.m., I was admitted into the office of the first-floor premises at 2320 South 13th street, city of Milwaukee, county of Milwaukee, state of Wisconsin, by Henry Meyer or Mier. I observed a pad of 'in' and 'out' sheets and a 'scratch' sheet on a desk in this office and a ticker tape and ticker machine on a stand in the office. On Monday, September 16, 1946, between the hours of 1:30 p.m. and 2:30 p.m., I was admitted by Henry Meyer or Mier into the first floor premises at 2320 South 13th street, city of Milwaukee, county of Milwaukee, state of Wisconsin, and observed two pads of 'in' and 'out' sheets on the desk in this office and while in the premises I heard Henry Meyer or Mier talking over the telephone and placing numerous horse-race bets to an unknown number and at the same time marking the bets on a sheet. Based upon my experience in connection with investigations on gambling activities, I believe that gambling is being conducted on these said premises and that gambling paraphernalia is now being concealed therein. I herewith submit the arrest record of Henry Meyer or Mier, showing his previous convictions for gambling."

Appellant argues the testimony that the witness observed a pad of "in" and "out" sheets and a "scratch" sheet on the desk in the office without a more detailed description of them constituted no proof they were gambling equipment or supplies. Sec. 348.085, Stats., provides:

"All devices or things whatever, whereby any person shall or may be induced to believe that he will or may receive any money, thing or consideration whatever as the result, in whole or part, of any contest of skill, speed or power of endurance of man or beast, are hereby declared to be gambling devices and to be public nuisances. . . ."

Law-enforcement officers and magistrates are familiar with the terms and phraseology used in the criminal field. To require an officer to explain the mechanism of a roulette wheel to a magistrate, in place of describing it as a roulette wheel, so that the magistrate could determine whether it was a gambling de-

vice in order to obtain a search warrant is absurd.   While many people may not know what a roulette wheel is or what "in" and "out" sheets are, we must assume magistrates are familiar with the meaning of terms usually used by persons engaged in the violation of criminal laws.

It is also argued that the testimony of the witness that horse-race bets were being placed is merely a conclusion on his part; that no facts were given from which the magistrate could come to a conclusion of his own as to whether horse-race bets were being placed or not.   And it is finally contended that when the witness testified he believed gambling was being conducted on the premises and gambling paraphernalia concealed therein, the witness was substituting his opinion for the independent conclusion of the magistrate that probable cause existed for the issuance of the search warrant, which is a matter that must be decided by the magistrate as a part of his judicial function before the search warrant could issue.

Appellant relies on *Kraus v. State* (1937), 226 Wis. 383, 276 N. W. 303, where it was held that the applicant for a search warrant may not substitute himself for the magistrate nor may a magistrate abdicate his judicial duty of determining the question of probable cause.   In *State v. Baltes* (1924), 183 Wis. 545, 198 N. W. 282, it was held that it is not necessary to furnish positive proof of existence of facts upon which the issuance of a search warrant is based but it is sufficient that the sworn proof is of such character as to induce an honest belief in the mind of the magistrate that the facts exist.   This was approved in *Glodowski v. State* (1928), 196 Wis. 265, 220 N. W. 227.   The magistrate knew the witness believed gambling was being conducted on the premises because he was before him asking for a search warrant.   This testimony was not the determining factor in the case, nor a substitution of his opinion for the opinion of the magistrate.   Ample testimony was introduced to induce an honest belief in the mind of the magistrate that gambling was being conducted on the premises,

as held in *State v. Baltes, supra; State v. Brockman* (1939), 231 Wis. 634, 283 N. W. 338; and *Mannery v. State* (1941), 236 Wis. 575, 295 N. W. 683.

The next question is whether the evidence is sufficient to sustain a conviction. The charge against appellant is that he "did unlawfully aid in setting up a lottery by printing lottery tickets, to wit: baseball pools and bank balances." The statute under which this prosecution was made is sec. 348.01, which provides:

"Any person who shall set up or promote any lottery for money, or shall dispose of any property of value, real or personal, by way of a lottery, or who shall aid, either by printing or writing, or shall in any way be concerned in setting up, managing or drawing any such lottery, . . ."

Appellant was operating a regular job-printing establishment at the time of the search. There were found on his premises several galleys of type for the printing of lotteries on bank balances, the world series, baseball pools, and also printed material partially completed for use in baseball pools. Among these were pink slips marked "The Camel — 1946 — World Series — 25 4-way 25." This is a combination of numbers denoting winning combinations for baseball pools used in figuring out the lottery. Galleys of type were introduced in evidence, together with galley proofs from the same, showing winning combinations and prizes in the baseball pools in the American Association and American and National leagues. The world-series pools were not entirely completed because the search was made prior to the time the winners in the two leagues were known, but they were sufficiently completed so they could be used for no other purpose. It was necessary to insert in them the names of the winning teams and certain other information.

It is argued this evidence does not show a lottery had actually been set up or put in action or had actually been carried on, but that whatever appellant had done was so far from com-

plete it could not have been used in the state in which it was for running off a lottery, and therefore does not bring this appellant within the statute. It is contended the legislature, by the language used in this section of the statutes, and other sections of the statutes referring to gambling, clearly intended the lottery must be set up and operating before anyone is guilty of violating the statute. Appellant fails to give any significance to the following words in the section: "who shall aid, either by printing or writing" in construing the entire statute. It is clear that setting up and managing a lottery is a violation of the law, but this does not preclude a person who, either by printing or writing, produces material for use in establishing a lottery, from being guilty of violating this section of the statutes merely because the lottery has not actually been set up and is not in operation. The printed matter here could be used for no other purpose. It is inconceiveable to believe the legislature intended that law-enforcement officers must sit by and observe the printing of lottery tickets and wait until the lottery is actually set up and in operation before the statute applies to the person who does such printing. To so hold would give no force and effect to the words "who shall aid, either by printing or writing" used in the statute. Citations relied upon by appellant are under statutes wholly different from our statute, and offer no assistance in interpreting the statute before us. We conclude the proof is sufficient to sustain the conviction.

*By the Court.*—Judgment affirmed.