THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUAN RIVERA DE JESÚS, k/a JUAN VEGA, Defendant and Appellant.

No. 16066.   Argued October 9, 1956.—Decided November 26, 1956.

698

*William Morales Torres* for appellant. *José Trías Monge, Attorney General,* and *Rafael L. Ydrach Yordán* and *Federico Ramírez Ross, Fiscal* and *Assistant Fiscal of the Supreme Court,* respectively, for appellee.

MR. JUSTICE SALDAÑA delivered the opinion of the Court.

Appellant herein was prosecuted in the Superior Court, Ponce Part, for a violation of § 4 of the *Bolita* Act, No. 220 of May 15, 1948 (Sess. Laws, p. 738); 33 L.P.R.A. § 1250.[1] It was alleged that "on or about April 17, 1954 . . . unlaw-

---

[1] Section 4 reads in part thus:

"Any person caught carrying or transporting or who has in his possession for any reason any *papeleta, billete,* ticket, notebook, list of numbers or letters, slips, or implements which can be used for the unlawful games of *bolita, bolipool,* combinations connected with the pools or *bancas* of the race tracks of Puerto Rico, and clandestine lotteries, and any person who possesses, sells, or in any way transports these or any

fully, voluntarily, maliciously, and criminally he had in his possession and control, tickets which may be used and were used in the unlawful *bolita* or *bolipool* game." After a trial, he was convicted and sentenced to a term of 9 months in jail. On appeal he seeks the reversal of the judgment because (1) the lower court "erred in dismissing the motion to set aside the search warrant and suppress evidence," and (2) the information does not state facts sufficient to constitute a public offense.

The evidence to which the first assignment refers consisted of 57 "fifths" or *bolita* tickets which were seized by the police in defendant's residence after a search authorized by a search warrant.[2] The affidavit supporting the issuance of the search warrant reads, insofar as pertinent, as follows:

"That it is known to me of my own personal knowledge that the defendant Juan Vega, who lives in the aforementioned house, is engaged in the manipulation of a clandestine lottery of the kind generally known as *Bolipool* or *Bolita,* because while the affiant was making a round along 'D' Street of the Barriada Ferrán, of Ponce, Puerto Rico, on April 5, 1954, at about 4:00 P. M., I passed in front of defendant's residence and saw him in the porch of his house while he received from a dark, tall, thin man, about 35 years old, a packet of *bolita* slips in different colors and lists of number of three digits, and that the defendant, becoming aware of my presence, went inside the house where they kept that material. . . ."

And the authorized search warrant sets forth the following:

---

other similar ones which may be utilized or used in said unlawful games or connected with the practice thereof, shall be guilty of a public offense and . . . Such person shall, upon conviction, be punished by imprisonment in jail for a term of not less than six (6) months or more than two (2) years; and for the second and subsequent violations, shall be punished by imprisonment in the Penitentiary for not less than one (1) year nor more than ten (10) years. . . ."

[2] The defendant accepted that he owned and was in possession of the house object of the search. He also admitted that he possessed the *bolita* material. The evidence thus obtained was introduced against the defendant by The People and admitted by the lower court after dismissing the motion to suppress it.

"Proof by affidavit having been presented to me on this day ... that Juan Vega ... in the house hereinafter described ..., in said place ..., during the daytime as well as at nighttime, allows and consents to the printing or engraving, or manages, or directs as the owner, or as manager or attorney in fact, or person in charge, or as agent or director, a clandestine lottery *banca,* commonly known as *bolita* or *bolipool,* which he operates in this city and neighboring barrios, manipulating and circulating combinations connected with the pools of the race tracks of Puerto Rico, bills, tickets or slips, or notebooks, or lists of numbers of *bolita* or *bolipool,* rubber stamps and other tools or implements which represent shares, chances, and interest in the clandestine lottery known as *bolita* or *bolipool;* that to carry out this unlawful game, the respondent uses also rubber stamps, numbered balls, shake bottles, (*candungos*), money, blank and printed *papeletas* and other tools or implements, and since this Court considers that there is probable cause that Juan Vega at the place and in the manner before mentioned is using the materials and tools afore-mentioned, knowingly and intentionally, in violation of Act No. 220 of May 15, 1948, which declares such games a public nuisance ..., HE IS HEREBY ORDERED to proceed immediately, at daytime or at nighttime to search the previously described house of Juan Vega, in search of the following material: *bolipool* slips, *bolita,* tickets, clandestine combinations connected with the pools of the race tracks of Puerto Rico, lists of numbers representing shares, chances and interest, shake bottles (*candungos*), numbered balls, money and other tools and implements which are being used in violation of the provisions of Act No. 220 of May 15, 1948. ..."

Defendant's contention that the search was illegal and the evidence thus obtained inadmissible is based on the ground that (1) the affidavit does not state facts sufficient to establish a probable cause; (2) the search warrant does not set forth the date of the alleged criminal offense; (3) and there is a fundamental variance between the affidavit and the search warrant in violation of § 507 of the Code of Criminal Procedure (34 L.P.R.A. § 1817).

I

The issuance of a search warrant authorizing

searches and seizures is subject to the limitations pointed out by § 10 of the Bill of Rights of our Constitution, to wit: it may only be issued by judicial authority and "only upon *probable cause* supported by oath or affirmation, and particularly describing the place to be searched . . . or the things to be seized." Evidence obtained in violation of this section shall be, by constitutional mandate, inadmissible in the courts. L.P.R.A. Vol. I, p. 181.[3] Furthermore, pursuant to § § 503 and 504 of the Code of Criminal Procedure, "a search warrant cannot be issued but upon probable cause . . ." and the judge, before issuing the warrant, "must . . . examine on oath the complainant, and any witness he may produce, and take their depositions in writing, and cause them to be subscribed by the parties making them." 34 L.P.R.A. §§ 1813 and 1814. In addition, §§ 505 and 506 of that Code provide that the affidavit must set forth "the facts tending to establish the grounds of the application, or probable cause for believing that they exist" and that the judge must issue the warrant if he is "satisfied of the existence of the grounds of the application, or that there is probable cause to believe their existence. . . ." 34 L.P.R.A. §§ 1815 and 1816.

The test or standard to determine whether there is probable cause cannot be expressed in inflexible and absolute terms: the question lies in determining whether the facts and circumstances are such as to warrant a man of prudence and caution to believe that the offense for which the law authorizes the issuance of a search warrant is being committed

---

[3] Prior to 1952, this Court had already adopted the rule that any evidence obtained by means of an illegal search is inadmissible. See *People* v. *Villariny,* 71 P.R.R. 694 (1950). Our Constitution thus adopted the rule of exclusion, which until now the Supreme Court of the United States refuses in principle to consider as part of the due process of law guaranteed by the Fourteenth Amendment (*Wolf* v. *Colorado,* 338 U. S. 25), and which governs only in the federal courts (*Weeks* v. *U. S.,* 232 U. S. 383). Cf. *Adamson* v. *California,* 332 U. S. 46 (1947); *Rochin* v. *California,* 342 U. S. 165 (1952); *Irvine* v. *California,* 347 U. S. 128 (1954); and, finally, *Rea* v. *United States,* 350 U. S. 214 (1956). See Allen, *The Wolf Case: Search and Seizure, Federalism and Civil Liberties,* 45 Ill. L. Rev. 1 (1950).

or has been committed. *Carroll* v. *U. S.*, 267 U. S. 132 (1925) ; *Steele* v. *U. S.*, 267 U. S. 498 (1925) ; *Dumbra* v. *U. S.*, 268 U. S. 435 (1925). Mere suspicion does not constitute probable cause, but neither is it necessary that the judge be convinced beyond any reasonable doubt that there has been a breach of the law. As indicated by the Supreme Court of the United States in *Brinegar* v. *U. S.*, 338 U. S. 160, 175 (1949) : "In dealing with probable cause, . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved." It appears thus that the juridical rule of probable cause recognizes and protects two interests at the same time: the relative demand of inviolability of the person and the need to enforce the criminal laws. And in applying such rule in each specific case, both interests must be reconciled.[4] There is no other way of reconciling social order with individual liberty.

Was there any probable cause for the issuance of the search warrant? We believe so. Neither the affirmation

---

[4] It is wisely stated in the report of the Committee of the Bill of Rights, that the domicile and the property of every citizen constitutes a prolongation of his personality because, after all, they are essential to the total fulfilment of human life. Hence ". . . any unauthorized invasion into that private circle is regarded by every man as a violation of his personality. . . ." But it is also stated that ". . . the same means and properties may be instruments of crime or the result of its commission . . . ," whereby "in these cases to pause before these barriers of the personality would be tantamount to an undue protection of crime and the criminal." Therefore, ". . . the solution is surrendered, with all the guarantees, to the judicial authority . . ." and *"only in the case of well founded suspicions, that is, when there is probable cause—except in cases of 'in flagrante' offenses determined by the criminal law—the sole authority for issuing warrants for arrest or for searches will rest on the judiciary."* (Italics ours). 21 *Rev. Jurídica de la U.P.R.* 1 (1951).

Delegate Mr. Jaime Benítez, president of the aforesaid Committee, merely stated in the course of the debates of the Constitutional Convention that the phrase probable cause "has its meaning in law and to it we adhere." *Diario de Sesiones, Procedimientos y Debates de la Convención Constituyente de Puerto Rico*, 600.

that the defendant "is engaged in the manipulation of a clandestine lottery of *Bolipool* or *Bolita*" nor the statement that the affiant saw the defendant receiving "lists of numbers of three digits" justify the issuance of the warrant. In its context, the first is a conjecture and the second alone is insufficient, as held in *People* v. *Franchi,* 78 P.R.R. 296 (1955). But here, the affiant also stated that: *"on April 5, 1954, at about 4 P.M., I passed in front of defendant's residence and saw him on the porch of his house while he received from a dark, tall, thin man, about 35 years old, a packet of bolita slips in different colors and lists of number of three digits, and that the defendant, becoming aware of my presence, went inside the house where they kept that material. . . ."* Thus, these are personal appreciations and observations of facts which a police officer perceived through his own senses. *Cf. People* v. *Albizu,* 77 P.R.R. 851, 856. Therefore, although the data on which they are based are not specified, we believe they constitute statements of fact which may not be branded as opinions.

Actually, a pure sensation is an abstraction and every perception involves an interpretation which depends on a great number of factors, including all our former experiences and knowledge. Hence, there only exists a relative distinction between the concepts of *"fact"* and *"opinion."* It is merely a question of degree. The essential point, in our opinion, is that the affiant in this specific case could adequately communicate the facts which he personally perceived in the manner of inferences. To demand that a police officer in Puerto Rico describe in detail what *bolita slips* are (that is to say, that he should express the "basic facts" on which he based his visual perception) instead of simply stating that he saw with his own eyes "a packet of *bolita* slips in different colors," would be as absurd as to say that it is necessary to describe the whole mechanism of a still instead of simply labeling it "a still" or the whole frame of

a roulette instead of simply calling it "a roulette." Such specification has never been demanded. See *People* v. *Negrón*, 76 P.R.R. 323, 325–326 (1954) ; *Mannery* v. *State*, 295 N. W. 683 (Wisc. 1941) ; *State* v. *Mier*, 31 N. W. 2d 148 (Wisc. 1948) ; *State* v. *Harris*, 39 N. W. 2d 912 (Wisc. 1949). In the same manner a witness at the trial may express inferences as to questions of general knowledge such as the state of intoxication of any person (*People* v. *Montañez*, 54 P.R.R. 810), at what speed an automobile was running (*People* v. *Cruz*, 59 P.R.R. 569), and whether what another person had in his hands was a revolver (*People* v. *Guzmán*, 52 P.R.R. 444). In those cases the witness communicates to the judge or the jury who is to determine the defendant's innocence or guilt, his perceptions even in the form of inferences without previously expressing the "basic facts" on which his inferences are based. See 2 Morgan, *Basic Problems of Evidence* (1954) 181–197; 7 Wigmore, *Evidence* (3d ed., 1940) §§ 1917–2028.[5] Still more: In Puerto Rico the judges may take judicial notice of the manner in which *bolita* is played. *People* v. *Mantilla*, 71 P.R.R. 35 (1950).

Therefore, it cannot be denied—and this is what really counts—that, taking into consideration the nature of the offense charged in this case and the rest of the concurring circumstances, including the affiant's competence, to allow him to state what he perceived with his own senses in the form of inferences, does not impair here the judicial function of determining a probable cause. In similar circumstances,

---

[5] It is convenient to note that probable cause may be determined on the basis of evidence which would be inadmissible at a trial, as long as it is sufficient to induce a person of prudence and caution to believe that the offense for which a search warrant may be lawfully issued is being committed or has been committed. *Brinegar* v. *U. S.*, 338 U. S. 160, 172–176 (1949) ; *The Probable Cause Requirement for Search Warrants*, 46 Harv. L. Rev. 1307, 1310–1311 (1933) ; 1 Wigmore, *Evidence* (3d ed., 1940) 179 *Cf. Costello* v. *U. S.*, 350 U. S. 359 (1955). See, also, *U. S.* v. *Physic*, 175 F. 2d 338 (C.A. 2, 1949), and *Seymour* v. *U. S.*, 177 F. 2d 732 (D. C. Cir. 1949).

the Supreme Court of the United States held in *Steele* v. *U. S.*, *supra*, at pages 504–505 (1925) that there was probable cause for a search warrant by the declaration of a police officer to the effect that he had seen cases labelled "whiskey" which looked to him like whiskey cases. And in other *bolita* cases we have reached similar conclusions. Thus, for example, in *People* v. *Báez*, 70 P.R.R. 578, 579–80 (1949), we upheld the validity of an affidavit where the affiant stated that while passing in front of defendant's house he saw him handling *bolipool* tickets, which he counted jotting down at the same time numbers of a paper list. We likewise held in *People* v. *Villariny*, *supra*, that in order to authorize a warrant, the statement of a police officer to the effect that when he paused in front of defendant's house, he could notice that two people delivered to the latter a packet of paper lists and *bolipool* tickets, was sufficient. *Cf. People* v. *Yulfo*, 71 P.R.R. 767 (1950); *People* v. *Albizu*, *supra*; and *People* v. *Bonilla*, 78 P.R.R. 144 (1955).[6]

In brief, the statements of facts which are set forth in the affidavit are sufficient to conclude that the defendant kept *bolita* material in his residence, and contrary to appellant's allegation, there was probable cause for the issuance of a warrant in the case at bar. *Cf. United States* v. *Carroll*, 234 F. 2d 679 (D. C. Cir. 1956).

## II

■■ For a search to be lawful it is not necessary that the warrant sets forth the date on which the alleged offense

---

[6] See also: *Collins* v. *Lean*, 9 Pac. 173 (Cal. 1885); *U. S.* v. *Celedonia*, 95 F. Supp. 228 (W. D. Pa. 1951), and 64 A.L.R. 1512. The affidavit in *People* v. *Capriles*, 58 P.R.R. 551 (1941), was insufficient because it did not state in what manner the affiant had obtained "personal knowledge" of the facts set forth therein. *Cf. People* v. *Aybar*, 68 P.R.R. 6 (1948), and *People* v. *District Court*, 69 P.R.R. 383 (1948). Of course, the evidence obtained in the case at bar is not inadmissible simply because defendant was charged in the affidavit with the manipulation or exploitation of a *bolita* game in violation of § 10 of Act No. 220 of 1948. See *People* v. *Cortés*, 70 P.R.R. 453–455 (1949).

was committed. Our statute has no such requirement. See 34 L.P.R.A. §§ 1811 to 1830. What we have held is that "the affidavit upon which a search warrant issues should state the date on which the commission of the offense was observed by affiant and that said statement in the testimony is essential for the validity of the warrant and that there does not exist a probable cause for the issuance of the same in the absence of said requisite." *Figueroa* v. *District Court*, 72 P.R.R. 23, 29 (1951). In other words, it is the affidavit which should state the date on which the commission of the offense was observed so that the judge, before authorizing the search warrant, may determine whether or not it is too remote and whether the evidence sought to be seized may still be at the place to be searched. That is why an affidavit must be made "within a reasonable time after the affiant becomes acquainted with the facts reported therein, it being a part of the judicial function, in determining whether there is probable cause, to judge, in each case, whether the facts set forth are so remote that they do not render probable the existence of cause for the search." *People* v. *Albizu, supra,* p. 857 (1955). In this case, the facts observed by the affiant took place on April 5, 1954, and the affidavit on which such date is set forth was made three days later. On that same date the search warrant was issued. Therefore, those requirements were met.

### III

■■ In order to be valid, the search warrant must be substantially conceived in the terms set forth in § 507 of the Code of Criminal Procedure, which reads: "Proof by affidavit, having been this day made before me by (. . .), *stating (the grounds of the application . . .),* or if the affidavit be not positive, *that there is probable cause for believing that, (stating the ground of the application in the same manner)*, you are therefore commanded, . . ." 34 L.P.R.A. § 1817 (Italics ours). That is to say, the search

warrant must always include the "grounds of the application." See *People* v. *Hernández*, 75 P.R.R. 852, 858 (1954). For example, in *Steele* v. *U. S.*, *supra*, at p. 501, it was held that if there is probable cause there must be "issue [d] a search warrant . . . stating the particular grounds or probable cause for its issue. . . ." Likewise, in *People* v. *Moten*, 206 N. W. 506 (Mich. 1925), the facts were set forth in the affidavit but the warrant was declared void because they were not copied or substantially expressed in the warrant. See also *Bedenarzik* v. *State*, 185 N. E. 114, 115–116 (Ind. 1933); *Crosby* v. *State*, 110 So. 122 (Miss. 1926); *People* v. *Bules*, 207 N. W. 818 (Mich. 1926); *People* v. *Galnt*, 209 N. W. 915 (Mich. 1926); *Heyvert* v. *State*, 194 N. E. 324 (Ind. 1935); Machen, *The Law of Search and Seizure* (1950), 18–19; Cornelius, *Search and Seizure* (2d ed., 1930) 454–458.

And it is not difficult to verify that the grounds which appear in the search warrant are quite far from being the grounds set forth in the affidavit. While the sole fact arising from the affidavit is that the defendant received from another person a packet of *bolita* slips in different colors, the warrant declares that the affiant said that at the place to be searched the defendant: ". . . allows and consents to the printing or engraving, or manages, or directs as the owner, or as manager or attorney in fact, or person in charge, or as agent or director, a clandestine lottery *banca*, commonly known as *bolita* or *bolipool*, which he operates in this city and neighboring barrios, manipulating and circulating combinations connected with the pools of the race tracks of Puerto Rico, bills, tickets or slips, or notebooks, or lists of numbers of *bolita* or *bolipool*, rubber stamps and other tools or implements which represent shares, chances and interest in the clandestine lottery known as *bolita* or *bolipool*; that to carry out this unlawful game, the respondent uses also rubber stamps, numbered balls, shake bottles, (*candungos*), money, blank and printed *papeletas*, and other tools or implements."

Furthermore, in the warrant the judge completely omitted all the statements which the police officer actually made. The same contains no reference to the facts set forth in the affidavit.

Consequently, and in violation of § 507 of the Code of Criminal Procedure, 34 L.P.R.A. § 1817, the warrant did not contain "the grounds of the application" but some imaginary facts which naturally were not supported by oath or affirmation. And since, on the other hand, none of the material facts alleged in the affidavit were set forth in the warrant, we are not dealing here with additional matter or unnecessary words added by the judge and which may be considered superfluous as constituting a harmless variance between both documents. The inconsistency between the warrant and the affidavit is of such a nature that it has inevitably affected the fundamental rights of the person against whom the warrant was issued: the search was ordered upon setting forth as *sole* grounds in support thereof facts which are fictitious and, in brief, the determination of the judge in authorizing the warrant was made in the vacuum. The case of *People* v. *Hernández, supra*, at pp. 852, 856–859 (1954), is therefore inapposite. Contrary to the situation in the case at bar, the search warrant in the former case sets forth the material facts alleged in the affidavit and the additional phrases of the judge could be considered as surplusage because they were unnecessary words not affecting the rights of the defendant or violative of the provisions of § 507 of the Code of Criminal Procedure. *Cf. Hysler* v. *U. S.*, 86 F. 2d 918 (C. A. 5, 1937).

The fact that, based on the affidavit, the judge might have issued a valid search warrant only serves to stress the necessity that courts should comply with the procedural requirements which safeguard the right against unreasonable and arbitrary searches. It is not the case of mere technicalities but rather of the protection of a constitutional and

statutory right which is essential to our liberty. And, as Judge Holmes stated on one occasion, that right which is one of the most precious possessed by man is "to be protected even if the same result might have been achieved in a lawful way." *Silverthone Lumber Co.* v. *U. S.*, 251 U. S. 385, 392 (1920). See also *Harris* v. *U. S.*, 331 U. S. 145, 168 (1946). Thus, the harsh and punctilious demand that all procedural requirements borne by the judiciary in searches and seizures be observed. In truth, there is no other way of guaranteeing individual liberty institutionally in the face of possible transgressions by the police power. All of this, as has been correctly stated, not because of relentment or tenderness towards the accused, but because they are essential to the very concept of justice and to the absolute dignity of man, a proof that we have reached a certain stage of civilization. See *People* v. *Fournier*, 77 P.R.R. 208, 290 (1954) ; *Stein* v. *New York*, 346 U. S. 156, 200 (1952). This should not be surprising for ". . . The history of liberty has largely been the history of observance of procedural safeguards," and, furthermore, "the effective administration of criminal justice hardly requires disregard of fair procedures imposed by law." *McNabb* v. *U. S.*, 318 U. S. 332, 347 (1943). But it is of utmost importance to repeat, even if the latter is not precise, that ". . . a degree of inefficiency is a price we necessarily pay for a civilized, decent society." Douglas, *An Almanac of Liberty* (1954) 354.

▆▆▆▆ Since the search warrant in the instant case is void, the lower court should have sustained defendant's motion to return the evidence unlawfully obtained and not to allow its presentation in evidence. If we discard the evidence furnished by the search warrant, there is no evidence against appellant.[7]

---

[7] Although in view of our conclusion it is unnecessary to discuss the second error, it is obvious that the same is without merit. The information stated facts sufficient to constitute a public offense and the case of *People*

The judgment appealed from will be reversed and defendant acquitted.[8]

Mr. Justice Negrón Fernández concurs in the result in a separate opinion, with which Mr. Justice Belaval agrees.

Mr. Chief Justice Snyder and Mr. Justice Marrero dissent

---

MR. JUSTICE NEGRÓN FERNÁNDEZ concurring, and dissenting in part, with whom MR. JUSTICE BELAVAL concurs.

I agree with the underlying reason of the opinion of the majority for reversing the judgment in this case. It is evident that it was in the light of all the facts attributed to the affiant in the search warrant—and not merely in the light of the facts set forth in his affidavit—that the judge determined the existence of probable cause. He so states expressly in the warrant in which, after referring to facts not appearing in the affidavit, he says: ". . . and having this Court found probable cause that Juan Vega at the place *and in the aforesaid manner*, is employing the material and tools above mentioned, etc." (Italics ours.) Therefore, the judge based his determination of probable cause on an alleged affidavit which the officer never made, in which, in passing, he mentioned the *bolita* slips as part of the description of all the operations of a clandestine *banca*, of which no mention is made in the affidavit actually made by the

---

v. *Franchi*, 78 P.R.R. 296, is not applicable since it only refers to the sufficiency of an affidavit for the purpose of issuing a search warrant. See *People of Puerto Rico* v. *Acevedo*, Per Curiam decision of May 21, 1956. *Cf. People* v. *Mantilla*, 71 P.R.R. 35 (1950).

[8] A majority of the Court, constituted by Mr. Chief Justice Snyder, Mr. Justice Marrero, Mr. Justice Sifre, Mr. Justice Pérez Pimentel and the writer of this opinion, agrees with part I of this opinion. Besides, a majority of the Court constituted by Mr. Justice Negrón Fernández, Mr. Justice Sifre, Mr. Justice Pérez Pimentel Mr. Justice Belaval and the writer of this opinion, agree with part III. As to part II and footnote 7, the opinion of the Court is unanimous. Therefore, Mr. Chief Justice Snyder and Mr. Justice Marrero are of the opinion that the judgment should have been affirmed.

police officer. The fundamental guaranty against unreasonable searches and seizures is defeated by a judicial determination of probable cause based on imaginary facts.

Yet, I cannot agree with that part of the majority opinion where the Court concludes that the affidavit which the police officer actually made, if it had not contained the fatal variance pointed out above, was sufficient to issue the warrant. To determine whether the affidavit establishes a probable cause justifying the issuance of a search warrant pursuant to § 10 of the Bill of Rights of our Constitution [1] and § 503 of the Code of Criminal Procedure,[2] we must examine the warrant in the light of the single fact on which the *Fiscal* of this Court relies to uphold its validity: that the police officer testified that he saw the defendant ". . . in the porch of his house while he received from a dark, tall, thin man, about 35 years old, a packet of *bolita* slips in different colors. . . ." This statement by the police officer—that the slips of the packet which he saw in defendant's hands were *bolita* slips—without any further description from which the judge could determine, by himself, that they were actually *bolita* slips, constitutes, in my opinion, a mere conclusion which is insufficient to support the warrant.

The determination of probable cause is a function of the judicial authority which can not be exercised unless the judge, from the facts set forth in the affidavit is "therefore satisfied" that there are grounds for making the application. Section 506, Code of Criminal Procedure. Affiant's labelling of such slips had to be based on facts, that is, on a description

---

[1] "No warrant for arrest or search and seizure shall issue except by judicial authority and only upon probable cause supported by oath or affirmation, and particularly describing the place to be searched and the . . . things to be seized."

[2] This section reads as follows:

"A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person, *and particularly describing the property and the place to be searched.*" (Italics ours.)

of those slips from which the judge might reasonably conclude that they were *bolita* slips as distinguished from any other kind of slips or tickets not used in that game.

An affidavit may be rendered insufficient, notwithstanding the fact that an affiant sets forth therein his "personal appreciations and observations of facts which a police officer perceived through his own senses", which in proper cases may be insufficient, *People* v. *Albizu*, 77 P.R.R. 843, 851, if the facts observed and set forth do not establish, by themselves, sufficient cause for the search. There is considerable difference between the appreciations and observations concerning facts which in themselves establish probable cause and the appreciation and observation of facts which do not. This is not a case of an object or artifact—still, roulette, machine gun—whose conformation or physical structure, by itself, may produce in the observer an unmistakable perception of that object or artifact, which, upon being conveyed to the judicial authority through an affidavit, may only require a mere descriptive phrase, besides its name, to lead the judge to the conviction required by law for a valid determination of probable cause. This is a case of "a packet of *bolita* slips of different colors" that the affiant says to have seen being delivered to the defendant by a dark man whom he unnecessarily describes with the precision with which he should have described the slips and not their bearer.

The essential thing, in my opinion, is not whether the police officer had a sensation through the visual perception which he correctly interpreted: the essential thing is whether the individual guaranty against unreasonable searches has been fulfilled by the inferences that the agent deducted from his observation without having stated the basic fact on which he based those inferences. If the affiant saw "a packet of *bolita* slips, in different colors," there cannot be any rational justification for his failure to state in his affidavit the *facts* on which he based his conclusion that the "packet" in question

contained *bolita* slips. If the agent perceived facts from which he might reasonably *infer* that the "packet" contained *bolita* slips, a minimum sense of respect for the constitutional guaranty made it imperative for him to convey to the judge, in his affidavit—in order that the latter could make his own determination, as required by law,—the facts which he observed and on which he based his inference, that is, the description of the printed papers which he labeled *bolita* slips, and not that he communicate to the judge his mere inference.

The fact that this Court has taken judicial notice—*People v. Mantilla,* 71 P.R.R. 35—of the manner in which *bolita* is played, does not supply the deficiency of the affidavit. But if we were to resort to that knowledge in order to measure the sufficiency of the affidavit in issue, we would find that in the case of *printed slips,* they contain three *printed* digits, the winning number generally corresponding to the last three digits of the first prize of the official lottery of Puerto Rico. Did these slips contain three printed digits? Four? Five? Where in the affidavit is there any indication that might convince the judge who issued the warrant, in performing his exclusive function—not to be delegated to a public peace officer—of determining probable cause, that they were slips of the prohibited *bolita* game? Why not of the official lottery of Puerto Rico? Why not of any other kind of clandestine lottery, of the kind prohibited by law, not necessarily *bolita?*

Neither the constitutional guaranty against unreasonable searches nor the equal demand of judicial determination of probable cause to order a search can be met by that unsubstantial description which submits the exercise of the unfettered judicial function to the conclusive criterion of a police officer, and places in his hands, supported only by his own inference, the protection of the citizen from the arbitrary invasion of his home.