EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* SANTOS VILLARINY COLÓN, acusado y apelante.

Núm. 14326.—*Sometido:* Julio 3, 1950. *Resuelto:* Julio 14, 1950.

---

742

R. *Muñoz Ramos* e *Inez Acevedo de Campos*, abogados del apelante.; *Hon. Procurador General Vicente Géigel Polanco* y *J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

El apelante fué convicto de una infracción a la Ley núm. 220 de 1948 ( (1) pág. 739) (Bolita) y sentenciado a cumplir seis meses de cárcel. El fiscal de este Tribunal se allana a

la revocación de la sentencia solicitada por el apelante en este recurso por entender que el segundo error señalado fué cometido por la corte inferior. Dicho señalamiento es al efecto de que ésta erró al admitir como prueba el material obtenido mediante el allanamiento de la casa del apelante.

En su alegato el Fiscal resume correctamente la declaración del único testigo de cargo en esta forma:

"El único testigo presentado por el fiscal, el detective Silvestre Vivaldi, declaró lo siguiente: Que el día 17 de julio de 1948, el policía Vázquez, el cabo Escalona, el detective Poventud y él se personaron en la casa del acusado y una vez provistos de una orden de allanamiento procedieron a registrarla habiendo ocupado sobre una mesa dos pequeñas listas de papel que contenían números; en una cartera que les entregó la esposa del acusado, ocuparon tres listas de papel conteniendo también números. (Págs. 13-14 T.E.) ; y en un cajón de una mesa ocuparon una libreta; que los números de esas listas se juegan en relación con las últimas tres cifras del premio mayor de la Lotería Nacional de Santo Domingo. Esa fué, en síntesis, la declaración del único testigo del Pueblo, habiendo renunciado el fiscal al resto de la prueba por ser de carácter acumulativo.

"En la repregunta, declaró este testigo que obtuvo la orden de allanamiento contra el acusado porque dos días antes del registro pasó por su casa y lo vió en el balcón hablando con dos personas que estaban frente; que esas personas le entregaron un paquete de listas (Pág. 18 T.E.) ; que ese paquete estaba doblado como en tres dobleces y contenía de tres a cuatro papeles; que le entregaron esos papeles al acusado y se fueron y él no hizo nada porque no tenía orden de allanamiento (Pág. 23 T.E.) ; que el testigo se encontraba como de diez a doce pies de distancia de ellos; que no sabe si los papeles que estaban dentro tenían números, que solamente vió los de afuera, pero que no sabe de qué eran esos números (Pág. 26 T.E.) ; que fué después que hizo el allanamiento que averiguó de qué eran los números. Este testigo declaró en el contrainterrogatorio en varias ocasiones que no sabía de qué eran los papeles que le habían entregado esos individuos al acusado."

Hemos leído detenidamente la declaración del testigo Vivaldi y, en efecto, ella demuestra que no obstante haber hecho

constar en la declaración jurada que prestó ante el Juez
Municipal de Ponce el 16 de julio de 1948 para obtener la
orden de allanamiento para registrar la casa del apelante,
que ". . . ayer día 15 de julio de 1948 a las 8:00 p.m. y mien-
tras me encontraba por la calle San Rafael de Ponce, y al
detenerme frente a la casa del querellado pude observar que
dos individuos entraron a la casa del querellado y le entre-
garon a éste un paquete que contenía listas de papel y billetes
de boli–pool, que entonces el señor Villariny se entró para
una de las habitaciones de su casa para donde se llevó el pa-
quete", lo cierto es que él, Vivaldi, en ningún momento pudo
determinar que las listas que los dos desconocidos le entre-
garon al apelante en el balcón de su casa, contenían números
del juego de la bolita. Afirmativamente quedó demostrado
con la declaración de Vivaldi que fué *después* de allanada la
casa del apelante que pudo dicho testigo apreciar que las
listas que ocupó contenían números de dicho juego clandestino.
Veamos esa parte de su declaración:

"¿Entonces usted estaba como a diez o doce pies de esos
individuos?

"Más o menos esa distancia.

"¿Y a esa distancia usted vió el paquete de papel doblado?
"Sí.

"¿Y vió usted ahí numeros, lo que había allí escrito?
"Sí, señor.

"¿Y vió los números? ¿Sabe cuáles son?
"No, señor.

"¿Usted sabe cuántos números estaban escritos allí?
"No, señor, porque nunca estuvieron en mis manos.

"¿Usted sabe si los papeles que habían adentro estaban escri-
tos con números?
"No sé si los de adentro estaban con números o no.

"¿Los únicos que vió que estaban escritos eran los de afuera?
"Sí.

"¿Y dice usted que a esa distancia vió si eran números o
letras?
"Yo vi números.

"¿No vió letras?

"No, porque era una fila, se veía como cuando usted va a sumar distintas cantidades.

"¿Usted no sabe de qué eran esos números?

"*No.*

"¿A estas alturas, no sabe de qué eran esos números?

"Yo sé de qué eran los números, *porque después cuando yo hice el allanamiento,* ocupé de esa misma cantidad de listas, ocupé listas conteniendo números.

"Vamos por parte, testigo. ¿Usted ha dicho a la Corte que usted no sabía en el momento que entregaban eso al acusado de qué eran esos números?

"*En ese momento, no lo sabía.*

"¿Y usted dice que averiguó de qué eran esos números cuando hizo el allanamiento y encontró estos papeles?

"*Exactamente.*

"Fíjese, la pregunta mía es clara. ¿Usted ha dicho aquí a la Corte, y yo pido que me lo repita, que usted supo qué eran esos números que vió a aquellos ciudadanos, *cuando provisto de una orden de allanamiento entró y ocupó estas listas?*

"*Exacto.*" (Bastardillas nuestras.)

Con motivo de la declaración del testigo Vivaldi, la defensa se opuso a que se admitieran como prueba las listas ocupadas en la casa del apelante a virtud de la orden de allanamiento por entender que dicha ocupación fué ilegal, ya que dicho testigo no sabía de qué eran las listas que, según él, vió entregar al apelante dos días antes de obtener la orden de allanamiento y vino a cerciorarse de que eran de bolita después de haber realizado el allanamiento. La corte inferior admitió la prueba.

 El hecho de que el acusado hubiera radicado una moción sobre supresión de la prueba el mismo día de la vista y que, por este motivo, fuera desestimada dicha moción, (¹)

---

(¹) Hemos resuelto que estas mociones deben presentarse antes del juicio. *Pueblo* v. *Rodríguez,* 70 D.P.R. 514 y casos en él citados. El hecho de que en el caso de *State* v. *Dersiy,* 215 Pac. 34, citado en la nota (1) del de *Pueblo* v. *Nieves,* 67 D.P.R. 305, 309, se usara la frase "dentro de un tiempo razonable antes de que el caso sea llamado para juicio", no significa, como arguye el apelante, que una moción de esta naturaleza radicada el mismo día del juicio pero antes de empezar la vista, cumpla con la regla

no era un impedimento para solicitar su supresión durante el juicio si en el curso de éste se hubiera demostrado la ilegalidad de la ocupación. Así lo hemos resuelto. En el caso de *Pueblo* v. *Nieves*, 67 D.P.R. 305, 307, después de ratificar la regla general de que la moción debe presentarse antes del juicio y la excepción a la misma enunciada en el caso de *Pueblo* v. *Capriles*, 58 D.P.R. 548 al efecto de que "cuando se demuestra o surge de la evidencia que el acusado se enteró por primera vez en el curso del juicio que la evidencia ilegalmente obtenida estaba en poder del fiscal o que existía la intención de presentarla contra él, la moción para suprimirla puede presentarse, aunque haya que hacer una pausa para resolver esta cuestión colateral", también dijimos que existía otra excepción al efecto de que "en los casos en que evidencia ofrecida ha sido ilegalmente obtenida, *si mientras se presenta la prueba de cargo surge del examen directo o del de repreguntas que la evidencia fué ilegalmente obtenida*—como hemos supuesto en el presente caso—y por lo tanto, no es necesario detener los procedimientos en el caso criminal para resolver una cuestión colateral, *el acusado puede objetarla, a pesar de que antes del juicio hubiera tenido conocimiento de que tal evidencia se intentaba presentar en su contra y aunque previamente al juicio hubiera solicitado tal supresión y la moción para suprimirla hubiera sido denegada.*" (Bastardillas nuestras.)

▆▆▆▆▆ ¿Fué ilegalmente obtenida la prueba en este caso? Para que lo fuera, el acusado tenía que haber demostrado que la orden de allanamiento fué, a su vez, ilegalmente expedida. Ahora bien, la declaración jurada que sirvió de base para demostrar que existía causa probable para expedir dicha

---

expuesta. Ya dijimos en *Pueblo* v. *Capriles*, 58 D.P.R. 548, 552, citando jurisprudencia, que: "Lo que exige la jurisprudencia tanto de las cortes nacionales como de la inmensa mayoría de los Estados, y la de esta misma corte, es que la moción se presente *en fecha anterior* a la señalada para la vista del juicio, de suerte que no se interrumpa el procedimiento para recibir evidencia y resolver una cuestión colateral." (Bastardillas nuestras.)

orden, podía ser impugnada, en cuanto a su suficiencia, por lo que en ella se hizo constar por el declarante. *Pueblo* v. *Capriles*, supra, a las págs. 555–560 y casos en él citados. Es decir, la suficiencia de la declaración jurada debe determinarse por hechos que en ella aparecen expuestos y que sirvieron de base para que el juez que expidió la orden de allanamiento llegara a la conclusión de que existía causa probable para registrar la casa del apelante. Si dicha declaración es suficiente, de su faz, no puede luego, antes o durante el juicio del caso, impugnarse su suficiencia mediante prueba de que lo afirmado bajo juramento en la declaración es falso. La jurisprudencia puede decirse que es casi unánime en este sentido, excepto cuando existe un estatuto autorizando tal impugnación.[2] En la anotación contenida en 5 A.L. R.2d 394, pueden consultarse los casos que sostienen esta regla. En Cornelius *on Search and Seizure*, 2da. ed., sec. 169 (89), pág. 425, se dice en parte lo siguiente:

"Algunas cortes han resuelto que, a menos que el estatuto disponga otra cosa como por ejemplo el código federal, cuando se radica una declaración jurada o se presta testimonio para la expedición de una orden de allanamiento y la declaración jurada o el testimonio presenta un caso *prima facie* de causa probable, el mismo no puede ser controvertido o puesto en disputa con el fin de anular la orden. Los casos han ido tan lejos hasta sostener que al querellante mismo no se le permitirá desmentir la veracidad de las declaraciones que hizo bajo juramento, con el fin de viciar una orden. . ."

Y en la sección 170 de la misma obra se dice:

"El acusado durante el juicio no puede desmentir o controvertir las afirmaciones contenidas en el *affidavit* de la orden de allanamiento con el fin de invalidar el registro, ni puede repreguntar a la persona que hizo el affidavit en cuanto a la veracidad de tales afirmaciones."

En el caso de *Smith* v. *State*, 62 A.2d 287 (Md., 1948), se dijo lo siguiente:

[2] Un ejemplo es la Ley Federal de Espionaje de 1917 y su corolario la Regla 41 de las Reglas Federales sobre Procedimientos Criminales.

"La mejor regla parece ser que la corte al considerar la existencia de causa probable debe limitarse a la declaración jurada misma, y la veracidad de los alegados fundamentos expuestos en la declaración jurada no puede ser controvertida . . . admitiendo el testimonio del acusado y de otros testigos. (Citas.) . . . Específicamente, la existencia de causa probable no puede ser contradicha con la mera denegación por el acusado de los hechos dados bajo juramento. (Cita.) Somos de opinión que cualquier investigación en cuanto a si la declaración jurada, que sirvió de base a la orden de allanamiento, demostró causa probable está constreñida a la declaración jurada únicamente y no debe admitirse para controvertir la veracidad de las alegaciones allí contenidas."

En el caso de *Elms* v. *State*, 26 S.W.2d 211 (Tex., 1930), surgió una situación similar a la del presente caso y se dijo a la pág. 213:

"También hay queja del hecho de que del contrainterrogatorio de los policías que prestaron la declaración jurada aparece que ellos no tenían una información completa de los hechos que expusieron en la misma. Según entendemos las autoridades, esta corte ha rehusado consistentemente sostener contenciones basadas en que puede demostrarse o que se ha demostrado que las alegaciones contenidas en la declaración jurada son falsas o que el policía no estuvo justificado en hacer las alegaciones. Estas son materias para el magistrado a quien la declaración jurada es presentada y que actúa en una capacidad judicial al resolver sobre los hechos que así le fueron presentados. Cuando la declaración jurada es suficiente en cuanto a su forma y el magistrado la acepta y actúa sobre la misma, esta corte rehusará ir más allá de la declaración jurada. (Cita.)"

Creemos que ésta es la regla que debe prevalecer, y aplicándola a los hechos del caso de autos, no erró la corte inferior al admitir la prueba ocupada en la casa del apelante. La declaración jurada que sirvió de base a la orden de allanamiento exponía hechos suficientes constitutivos de causa probable. Si el policía que prestó dicha declaración mintió en cuanto a los hechos que en ella expuso es cuestión que podrá servir o no de base para la acción que en su contra proceda.

Empero, en tanto en cuanto a la orden de allanamiento expedida por el juez municipal a base de dicha declaración jurada, la misma es válida y la evidencia obtenida en el registro efectuado era admisible como prueba.

*Debe confirmarse la sentencia.*