EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN RIVERA DE JESÚS, c/p JUAN VEGA, acusado y apelante.

Número 16066.

*Sometido:* 9 de octubre de 1956. *Resuelto:* 26 de noviembre de 1956.

*William Morales Torres* abogado del apelante; *Hon. Secretario de Justicia José Trías Monge, y Rafael L. Ydrach Yordán y Federico Ramírez Ross, Fiscal y Fiscal Auxiliar, respectivamente, del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR SALDAÑA emitió la opinión del Tribunal.

El aquí apelante fué procesado en el Tribunal Superior,

Sala de Ponce, de infracción al art. 4 de la Ley de la Bolita, núm. 220 de 15 de mayo de 1948, pág. 739; 33 L.P.R.A. sec. 1250.([1]) Se le imputó que "allá en o por el día 17 de abril de 1954 . . . ilegal, voluntaria, maliciosa y criminalmente tenía en su poder y dominio, tickets que pueden usarse y se usaban para el juego ilegal de la Bolita o Boli-pool." Celebrado el juicio, fué convicto y sentenciado a extinguir una pena de nueve meses de cárcel. En apelación solicita que revoquemos dicha sentencia porque (1) el tribunal a quo "erró al declarar sin lugar la moción sobre nulidad de orden de allanamiento y supresión de evidencia", y (2) la acusación no aduce hechos constitutivos de delito público.

La evidencia a que se contrae el primer señalamiento consistió de 57 "quintos" o tickets de bolita y fué ocupada por la policía en la residencia del acusado mediante registro autorizado por una orden de allanamiento.([2]) La declaración jurada que sirvió de base para la expedición de dicha orden lee en lo pertinente así:

"Que me consta de propio conocimiento que el querellado Juan Vega, que reside en la residencia antes descrita, manipula Banca de Lotería Clandestina generalmente conocidas por Bancas de Bolipool o Bolita, porque mientras el declarante se encon-

---

([1]) El art. 4 lee en parte así:

"Toda persona que fuere sorprendida portando o conduciendo o que tuviere en su poder en cualquier concepto cualquier papeleta, billete, ticket, libreta, lista de números o letras, boletos o implementos que pudieren usarse para los juegos ilegales de la 'bolita', 'bolipul', combinaciones relacionadas con los 'pools' o bancas de los hipódromos de Puerto Rico y loterías clandestinas, y toda persona que poseyere, vendiere, o en cualquier forma transportare éstos o cualesquiera otros análogos que se pudieren utilizar o usar en dichos juegos ilícitos, o conectados con la práctica de los mismos, incurrirá en delito público y convicta que fuere dicha persona, será castigada con pena de cárcel que no será menor de seis (6) meses ni mayor de dos (2) años; y por la segunda y subsiguientes infracciones será castigada con pena de presidio no menor de un (1) ni mayor de diez (10) años . . ."

([2]) El acusado aceptó que era dueño y estaba en posesión de la casa objeto del allanamiento. Admitió además que poseía dicho material de bolita. La evidencia así obtenida fué presentada en contra del acusado por El Pueblo, y admitida por el tribunal sentenciador después de declarar sin lugar la moción para suprimirla.

traba dando un recorrido por la Calle 'D' de la Barriada Ferrán, de Ponce, Puerto Rico, el día 5 de abril de 1954, como a eso de las 4:00 P.M. pasé frente a la residencia del querellado y ví a éste cuando en el balcón de su residencia recibía de manos de un señor trigueño como de 35 años, delgado, alto, un paquete de boletos de bolita, en diferentes colores, y listas con números de tres cifras, que el querellado al notar mi presencia, entraron (sic) hacia el interior de la casa donde guardaron (sic) dicho material . . ."

Y la orden de allanamiento que fué autorizada, consigna lo siguiente:

"Habiéndose presentado en este día, prueba por medio de declaración jurada . . . , de que Juan Vega . . . en la casa que se describe a continuación . . . , en dicho sitio . . . , tanto de día como de noche, permite y consiente que se impriman o graben, o administra, o dirije como dueño, o administrador o apoderado, o encargado, o agente director, una banca de loterías clandestinas vulgarmente conocidas por Bolita o Boli-pool, la cual explota en esta ciudad y barrios limítrofes, manipulando y poniendo en circulación combinaciones relacionadas con los Pools de los Hipódromos de Puerto Rico, o billetes o tickets o boletos, o libretas, o listas numeradas de Bolita o boli-pool, sellos de goma y otros enseres e implementos representan acción, suerte e interés en el juego de loterías clandestinas conocidas por Bolita o Boli-pool, que para poner en ejecución dichos juegos ilícitos, el querellado utiliza también sellos de goma, boletos numerados, candungos, dinero, papeletas en blanco e impresas y otros enseres e implementos; y hallando esta Corte que hay causa probable de que Juan Vega en el sitio y en la forma antes dichos, está utilizando el material y enseres arriba mencionados, a sabiendas e intencionalmente, en violación de la Ley núm. 220 de 15 de mayo de 1948, la cual declara los juegos arriba mencionados estorbo público . . . SE ORDENA POR TANTO, que durante las horas del día y de la noche, proceda inmediatamente al registro de la casa de Juan Vega, antes descrita, en busca de las prendas siguientes: Boletos de Boli-pool, bolita, tickets, combinaciones clandestinas relacionadas con los pools de los hipódromos de Puerto Rico, listas con números representando acciones, suerte e interés, candungos, bolos, dinero, y otros enseres e implementos que se estén utilizando para violar las disposiciones de la Ley núm. 220 de 15 de mayo de 1948 . . ."

La contención del apelante al efecto de que el registro fué ilegal y la evidencia así obtenida era inadmisible, se funda en que (1) la declaración jurada no contiene hechos suficientes para establecer causa probable; (2) la orden de allanamiento no expresa la fecha en que ocurrieron los supuestos hechos delictivos; y (3) hay una discrepancia fundamental entre la declaración jurada y la orden de allanamiento, en violación del art. 507 del Código de Enjuiciamiento Criminal (34 L.P.R.A. sec. 1817).

## I

La expedición de una orden autorizando registros o allanamientos está sujeta a las limitaciones que señala la Sección 10 de la Carta de Derechos de nuestra Constitución, a saber: sólo puede expedirse por autoridad judicial y "ello únicamente cuando exista *causa probable,* apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse . . . y las cosas a ocuparse". Cualquier evidencia obtenida en violación de la referida sección es, por mandato constitucional, inadmisible en corte. L.P.R.A., Tomo 1, pág. 189.[3] Además, de acuerdo con los arts. 503 y 504 del Código de Enjuiciamiento Criminal, "no se podrá librar orden de allanamiento sino en virtud de causa probable . . ." y el magistrado antes de librar la orden "debe . . . examinar bajo juramento al querellante y a los testigos que éste presentare, tomando sus deposiciones por escrito, las cuales

[3] Antes de 1952 este Tribunal ya había adoptado la regla de que es inadmisible cualquier evidencia obtenida mediante un registro ilegal. Véase *Pueblo* v. *Villariny,* 71 D.P.R. 741 (1950). Nuestra Constitución adoptó así la regla de exclusión que hasta ahora la Corte Suprema de los Estados Unidos se niega en principio a considerar como parte del debido proceso de ley garantizado por la Décimocuarta Enmienda (*Wolf* v. *Colorado,* 338 U.S. 25) y que rige únicamente en las cortes federales (*Weeks* v. *United States,* 232 U.S. 383). Cf. *Adamson* v. *California,* 332 U.S. 46 (1947); *Rochin* v. *California,* 342 U.S. 165 (1952); *Irvine* v. *California,* 347 U.S. 128 (1954); y, por último, *Rea* v. *United States,* 350 U.S. 214 (1956). Véase Allen, *The Wolf Case: Search and Seizure, Federalism and Civil Liberties,* 45 Ill. L. Rev. 1 (1950).

suscribirán". 34 L.P.R.A. secs. 1813 y 1814. En adición, los arts. 505 y 506 de dicho Código prescriben que la declaración jurada debe exponer "los hechos que tiendan a demostrar los fundamentos de la petición, o las causas legítimas (*probable cause*) que haya para creer que existen tales fundamentos" y que el juez debe librar la orden si quedare "plenamente convencido de que hay fundamento para la petición o causas legítimas (*probable cause*) para creer en la existencia de aquellos fundamentos . . ." 34 L.P.R.A. secs. 1815 y 1816.

El criterio o medida para juzgar si existe causa probable no puede expresarse en términos rígidos y absolutos: la cuestión estriba en determinar si los hechos y las inferencias que se derivan de los mismos, a juicio de una persona prudente y razonable, bastan para creer que se está cometiendo o se ha cometido el delito por el cual la ley autoriza la expedición de una orden de allanamiento. *Carroll* v. *United States*, 267 U.S. 132 (1925); *Steele* v. *United States*, 267 U.S. 498 (1925); *Dumbra* v. *United States*, 268 U.S. 435 (1925). Meras sospechas no constituyen causa probable, pero tampoco es necesario que el juez quede convencido fuera de toda duda razonable de que se está violando la ley. Como indicó el Tribunal Supremo de los Estados Unidos en *Brinegar* v. *United States*, 338 U.S. 160, 175 (1949): "Cuando nos referimos a causa probable . . . actuamos a base de probabilidades. Estas no son cuestiones técnicas; se trata de consideraciones prácticas y reales que surgen en la vida cotidiana a base de las cuales actúan hombres prudentes y razonables y no técnicos en derecho. La norma o regla en cuanto a la prueba, por consiguiente, depende de la cuestión que debe probarse". Resulta pues que la regla jurídica de causa probable reconoce y protege a la vez dos intereses: la exigencia relativa a la inviolabilidad de la persona y la necesidad de poner en vigor las leyes penales. Y al aplicarla en cada caso concreto es preciso conciliar

ambos intereses.(⁴)    No hay otro modo de hacer compatible el orden social con la libertad individual.

¿Existió causa probable para la expedición de la orden de allanamiento en este caso?    Creemos que sí.    Ni la afirmación de que el acusado "manipula Banca de Lotería Clandestina generalmente conocida por Banca de Bolipool o Bolita" ni la afirmación de que el declarante vió al acusado recibiendo "listas con números de tres cifras" justifican la expedición de la orden.    En su contexto, la primera es una conjetura y la segunda por sí sola es insuficiente, como resolvimos en *Pueblo v. Franchi*, 78 D.P.R. 308 (1955).    Pero aquí el declarante expresó además que: "*. . . el día 5 de abril de 1954, como a eso de las 4:00 P. M. pasé frente a la residencia del querellado y ví a éste cuando en el balcón de su residencia recibía de manos de un señor trigueño, como de 35 años, delgado, alto, un paquete de boletos de bolita, en diferentes colores . . . que el querellado al notar mi presencia, entraron (sic) hacia el interior de la casa donde guardaron (sic) dicho material . . .*"    Se trata pues de apreciaciones y observaciones personales relativas a hechos que

---

(⁴) Se dice—y con razón—en el informe de la Comisión de Carta de Derechos que el domicilio y los bienes de cada ciudadano, constituyen una prolongación de su personalidad porque, en resumidas cuentas, son necesarias para una plena realización de la vida humana.    De ahí que ". . . toda intromisión sin su permiso en ese círculo privado equivale para todo hombre a una violación de su personalidad . . ."    Pero se advierte también que ". . . los mismos medios y propiedades pueden ser instrumentos de delito o resultado de su comisión . . .", por lo cual "en estos casos detenerse ante esas fronteras de la personalidad equivaldría a la protección indebida del delito y del delincuente."    Así pues, ". . . la solución se entrega, con todas las garantías, a la autoridad judicial . . ." y "*sólo para caso de sospechas fundadas, o sea, cuando medie causa probable —fuera de situaciones de delito 'inflagranti' determinadas por la ley penal—se concede a la autoridad judicial la facultad de expedir mandamiento de arresto o registro*".    (Bastardillas nuestras.)    21 Rev. Jurídica de la U.P.R. 1 (1951).

El delegado Sr. Jaime Benítez, presidente de la referida Comisión, se limitó a manifestar en el curso de los debates de la Convención Constituyente que la frase causa probable "*tiene su significado en derecho y a eso nos acogemos*".    Diario de Sesiones, Procedimientos y Debates de la Convención Constituyente de Puerto Rico, 600.

un agente de la policía percibió por sus propios sentidos. Cf. *Pueblo* v. *Albizu*, 77 D.P.R. 896, 902. Por eso, aunque no se especificaron los datos sobre los cuales se basan las mismas, creemos que constituyen manifestaciones de hecho y que no pueden tildarse de opiniones.

En realidad, una sensación pura es una abstracción y toda percepción envuelve una interpretación que depende de un sinnúmero de factores, incluyendo todas nuestras experiencias y conocimientos anteriores. De ahí que sólo existe una distinción relativa entre los conceptos de *"hecho"* y *"opinión"*: Es tan sólo una cuestión de grado. Así lo esencial, a nuestro juicio, es que el declarante en este caso específico podía comunicar adecuadamente los hechos que percibió personalmente en forma de inferencias. Exigir a un agente de la policía en Puerto Rico que describa en detalle lo que son *boletos de bolita* (es decir, que exprese los "hechos básicos" en que fundó su percepción visual) en vez de decir sencillamente que él vió con sus propios ojos "un paquete de boletos de bolita en diferentes colores", sería tan absurdo como decir que es preciso describir todo el mecanismo de un alambique en vez de calificarlo simplemente como "un alambique" o toda la armazón de una ruleta en vez de llamarla llanamente "una ruleta". Nunca se ha exigido semejante especificación. Véanse *Pueblo* v. *Negrón*, 76 D.P.R. 346, 348–349 (1954); *Mannery* v. *State*, 295 N.W. 683 (Wisc. 1941); *State* v. *Mier*, 31 N.W.2d 148 (Wisc. 1948); *State* v. *Harris*, 39 N.W.2d 912 (Wisc. 1949). Asimismo en el juicio un testigo puede expresar inferencias en cuanto a cuestiones de conocimiento general tales como el estado de embriaguez de una persona (*Pueblo* v. *Montañez*, 54 D.P.R. 852), a qué velocidad corría un automóvil (*Pueblo* v. *Cruz*, 59 D.P.R. 569), y si lo que otra persona tenía en sus manos era un revólver (*Pueblo* v. *Guzmán*, 52 D.P.R. 458). En esos casos el testigo comunica al juez o al jurado que debe determinar la inocencia o culpabilidad del acusado, sus percepciones aun en forma de inferencias sin expresar previa-

mente los "hechos básicos" sobre los cuales se basan las mismas. Véase 2 Morgan, *Basic Problems of Evidence* (1954) 181–197; 7 Wigmore, *Evidence* (3a. ed. 1940) secs. 1917–2028.[5] Más todavía: en Puerto Rico los jueces pueden tomar conocimiento judicial de la forma en que se juega la bolita. *Pueblo* v. *Mantilla*, 71 D.P.R. 36 (1950).

Por tanto, no podrá negarse—y esto es lo que más importa—que, tomando en cuenta la naturaleza del delito imputado en este caso y las demás circunstancias concurrentes, incluyendo la competencia del deponente, el permitir al declarante que manifieste lo que percibió con sus propios sentidos en forma de inferencias, no menoscaba aquí la función judicial de determinar causa probable. En circunstancias similares, la Corte Suprema de los Estados Unidos resolvió en *Steele* v. *United States*, 267 U.S. 498, 504–505 (1925) que constituía causa probable para una orden de allanamiento la declaración de un agente de la policía al efecto de que había visto unas cajas con el rótulo "whiskey" y que las mismas parecían en verdad ser cajas que contenían ese licor. Y en otros casos de bolita hemos llegado a conclusiones similares. Así por ejemplo, en *Pueblo* v. *Báez*, 70 D.P.R. 609, 610–611 (1949), sostuvimos la validez de una declaración jurada donde el deponente decía que al pasar frente a la residencia del acusado vió que éste tenía en sus manos billetes de bolipool, que los contaba y que a la vez apuntaba números en una lista de papel. Igualmente resolvimos en *Pueblo* v. *Villariny*, 71 D.P.R. 741 (1949) que era suficiente para autorizar una orden de allanamiento la declaración de un

---

[5] Conviene notar que la causa probable puede determinarse a base de prueba que sería inadmisible en un juicio, siempre que sea suficiente para inducir a una persona prudente y razonable a creer que se está cometiendo o se ha cometido el delito por el cual puede expedirse legalmente una orden de allanamiento. *Brinegar* v. *United States*, 338 U.S. 160, 172–176 (1949); *The Probable Cause Requirement for Search Warrants*, 46 Harv. L. Rev. 1307, 1310–1311 (1933); 1 Wigmore, *Evidence* (3ª ed. 1940) 179. Cf. *Costello* v. *United States*, 350 U.S. 359 (1955). Véanse además *United States* v. *Physic*, 175 F.2d 338 (C.A. 2, 1949) y *Seymour* v. *United States*, 177 F.2d 732 (D.C. Cir. 1949).

agente de la policía al efecto de que, al detenerse frente a la residencia del acusado, pudo observar que dos individuos le entregaron un paquete que contenía listas de papel y billetes de bolipool. Cf *Pueblo* v. *Yulfo*, 71 D.P.R. 820 (1950); *Pueblo* v. *Albizu*, supra; y *Pueblo* v. *Bonilla*, 78 D.P.R. 152 (1955).(6)

En suma: las manifestaciones de hecho que constan en el affidávit constituyen base suficiente para la conclusión de que el acusado tenía en su residencia material de bolita, y contrario a lo que alega el apelante, existió causa probable para la expedición de una orden de allanamiento en el caso de autos. Cf. *United States* v. *Carroll*, 234 F.2d 679 (D.C. Cir. 1956).

## II

■■ No es indispensable para darle legalidad a un registro que se consigne en la orden de allanamiento la fecha en que ocurrieron los supuestos hechos delictivos. Nuestro estatuto no exige tal requisito. Véase 34 L.P.R.A. sec, 1811 a 1830. Lo que sí hemos resuelto es que "la declaración jurada en que se funda una orden de allanamiento debe hacer referencia a la fecha en que se observó por el deponente la comisión del delito y que tal referencia en la declaración es esencial para la validez de la orden, no existiendo causa probable para la expedición de la misma en ausencia de tal requisito." *Figueroa* v. *Tribl. de Distrito*, 72 D.P.R. 24, 30–31 (1951). En otras palabras, es en el affidávit que debe constar la fecha de la observación de suerte que el

---

(6) Véanse además: *Collins* v. *Lean*, 9 Pac. 173 (Cal. 1885); *United States* v. *Celedonia*, 95 F. Supp. 228 (W.D. Pa. 1951) y 64 A.L.R. 1512. La declaración jurada en *Pueblo* v. *Capriles*, 58 D.P.R. 548 (1941) era insuficiente porque no decía en qué forma el declarante había obtenido "conocimiento personal" de los hechos allí expuestos. Cf. *Pueblo* v. *Aybar*, 68 D.P.R. 6 (1948) y *Pueblo* v. *Tribunal de Distrito*, 69 D.P.R. 413 (1948). Por supuesto, la evidencia obtenida en el caso de autos no es inadmisible por el mero hecho de que en la declaración jurada se imputó al acusado manipular o explotar un juego de bolita en violación de la sección 10 de la Ley núm. 220 de 1948. Véase *Pueblo* v. *Cortés*, 70 D.P.R. 479, 480–481 (1949).

magistrado antes de autorizar la orden pueda juzgar si es o no demasiado remota y si la evidencia que se interesa ocupar puede aún estar en el sitio a ser allanado. Por eso también debe prestarse la declaración "dentro de un período razonable después de conocidos por el deponente los hechos que se expongan en ella, siendo parte de la función judicial, al determinar si hay causa probable, el estimar, en cada caso, si los hechos expuestos son tan remotos que no hagan probable la existencia de causa para el allanamiento." *Pueblo* v. *Albizu*, 77 D.P.R. 896, 903 (1955). En este caso los hechos presenciados por el deponente ocurrieron el 5 de abril de 1954 y la declaración donde se hace constar dicha fecha fué suscrita tres días más tarde. En igual fecha fué librada la orden de allanamiento. Así pues dichos requisitos fueron cumplidos.

### III

■■ Para ser válida, la orden de allanamiento debe estar concebida substancialmente en la forma expuesta en el art. 507 del Código de Enjuiciamiento Criminal, que dice: "Habiéndoseme en este día presentado prueba, por medio de declaración jurada, firmada por (. . .) de que (*aquí se insertarán los fundamentos de la petición . . . o si no se dedujera una seguridad completa de la declaración jurada se hará constar que hay causa suficiente para creer en la existencia de los fundamentos, especificándose los de la petición en la misma forma*), se le ordena por lo tanto . . ." 34 L.P.R.A. sec. 1817 (Bastardillas nuestras.) Es decir, en la orden de allanamiento hay que incluir siempre los "fundamentos de la petición". Véase *Pueblo* v. *Hernández*, 75 D.P.R. 907, 913 (1954). Por ejemplo: en *Steele* v. *United States*, 267 U.S. 498 (1925) se resolvió que si hay causa probable debe "expedirse una orden . . . expresando los fundamentos específicos o la causa probable para su expedición". (501) De igual modo, en *People* v. *Moten*, 206 N.W. 506 (Mich. 1925) los hechos aparecían en el affidávit, pero

se declaró nula la orden porque los mismos ni se copiaron ni se expresaron sustancialmente en dicha orden. Véanse además *Bedenarzik* v. *State*, 185 N.E. 114, 115–116 (Ind. 1933); *Crosby* v. *State*, 110 So. 122 (Miss. 1926); *People* v. *Bules*, 207 N.W. 818 (Mich. 1926); *People* v. *Galnt*, 209 N.W. 915 (Mich. 1926); *Heyvert* v. *State*, 194 N.E. 324 (Ind. 1935); Machen, *The Law of Search and Seizure* (1950), 18–19; Cornelius, *Search and Seizure* (2a. ed. 1930) 454–458.

Y no es difícil comprobar que los fundamentos que aparecen en la orden de allanamiento distan mucho de ser los fundamentos que se consignaron en la declaración jurada. Mientras el único hecho que surge de ésta es que el acusado recibió de otra persona un paquete de boletos de bolita en diferentes colores, la orden atribuye al deponente haber dicho que en el sitio a ser allanado el acusado: ". . . permite que se impriman o graben, o administra, dirige como dueño, o administrador o apoderado, o encargado o agente director, una banca de loterías clandestinas vulgarmente conocidas por bolita o bolipool, la cual explota en esta ciudad y barrios limítrofes, manipulando y poniendo en circulación combinaciones relacionadas con los pools de los hipódromos de Puerto Rico, o billetes, o tickets, o boletos, o libretas, o listas numeradas de bolita o boli-pool, sellos de goma y otros enseres o implementos (que) representan acción, suerte e interés en el juego de loterías clandestinas conocidas por bolita o bolipool etc., que para poner en ejecución dichos juegos ilícitos el querellado utiliza también sellos de goma, bolos numerados, candungos, dinero, papeletas en blanco e impresas y otros enseres e implementos." Aún más: en la orden el juez omitió por completo todas las declaraciones que en verdad prestó el agente de la policía. La misma no contiene referencia alguna a los hechos que constan en el affidávit.

Por consiguiente, con infracción de lo dispuesto en el art. 507 del Código de Enjuiciamiento Criminal, 34 L.P.R.A.

sec. 1817, no se insertaron en la orden de allanamiento "los fundamentos de la petición" sino unos hechos imaginarios que no tuvieron naturalmente el apoyo de ningún juramento o afirmación. Y como por otra parte, ninguno de los hechos materiales alegados en la declaración jurada se hicieron constar en la referida orden, no se trata en este caso de materia adicional o de palabras innecesarias añadidas por el juez que puedan considerarse como superfluas por constituir una variación sin importancia entre ambos documentos. La incongruencia entre la orden y el affidávit es de tal naturaleza que inevitablemente afectó los derechos fundamentales de la persona contra quien se ejecutó la orden: se ordenó el allanamiento haciendo constar como *únicos* fundamentos para el mismo hechos que son ficticios y, en suma, la determinación del juez al autorizar la orden fué hecha en el vacío. Es inaplicable, por tanto, el caso de *Pueblo* v. *Hernández*, 75 D.P.R. 907, 911–914 (1954). Contrario a lo que ocurre en el caso de autos, allí la orden de allanamiento exponía los hechos materiales alegados en el affidávit y las frases adicionales añadidas por el juez podían considerarse como superfluas porque constituían palabras innecesarias que no afectaban los derechos del acusado ni violaban las disposiciones del art. 507 del Código de Enjuiciamiento Criminal. Cf. *Hysler* v. *United States*, 86 F. 2d 918 (C.A. 5, 1937).

El hecho de que, fundándose en la declaración jurada, el juez hubiera podido dictar una orden de allanamiento válida, sólo sirve para subrayar la necesidad de que las cortes observen estrictamente los requisitos procesales que salvaguardan el derecho contra registros arbitrarios e irrazonables. No se trata de meros tecnicismos y sí de la protección de un derecho constitucional y estatutario que es parte esencial de nuestras libertades. Y, como señaló en una ocasión el Juez Holmes, ese derecho que es uno de los más preciosos del hombre "debe protegerse aún si el mismo resultado hubiera podido alcanzarse en forma legal". *Silverthorne Lumber Co.* v. *United States*, 251 U.S. 385, 392 (1920).

Véase además *Harris* v. *United States*, 331 U.S. 145, 168 (1946). De ahí la exigencia áspera y puntillosa de que se observen todos los requisitos procesales que comporta la intervención judicial en los registros y allanamientos. En verdad no hay otro modo de dejar la libertad individual garantida institucionalmente frente a posibles transgresiones del poder público. Todo esto, como se ha dicho con razón, no por blandura o ternura hacia el delincuente, sino para resguardar la concepción de la justicia y de la dignidad absoluta de la persona humana, índice del grado de civilización que hemos alcanzado. Véanse *Pueblo* v. *Fournier*, 77 D.P.R. 222, 306 (1954); *Stein* v. *New York*, 346 U.S. 156, 200 (1952). En todo ello no hay que sorprenderse, pues ". . . la historia de la libertad ha sido en gran parte la historia de la observancia de salvaguardias procesales", y, además, "una administración eficiente de la justicia criminal no exige pasar por alto los procedimientos justos que impone la ley". *McNabb* v. *United States*, 318 U.S. 332, 347 (1943). Pero lo que más importa repetir, aún si esto último no fuera exacto, es que ". . . cierto grado de ineficiencia es el precio que necesariamente pagamos por una sociedad civilizada y decente". Douglas, *An Almanac of Liberty* (1954) 354.

Siendo nula la orden de allanamiento en este caso, el tribunal a quo debió declarar con lugar la moción del acusado para que le fuese devuelta la evidencia obtenida ilegalmente y no permitir su presentación en evidencia. Si descartamos la evidencia suministrada por la orden de allanamiento, no existe prueba alguna contra el apelante.(7)

---

(7) Aunque en vista de la conclusión a que hemos llegado se hace innecesario discutir el segundo señalamiento de error, es obvio que el mismo no tiene méritos. La acusación aducía hechos suficientes constitutivos de delito público y el caso de *Pueblo* v. *Franchi*, 78 D.P.R. 308 (1955) no es aplicable ya que se refiere únicamente a la suficiencia de una declaración jurada para los fines de expedir una orden de allanamiento. Véase *Pueblo* v. *Acevedo*, resuelto por opinión *Per Curiam* de 21 de mayo de 1956. Cf. *Pueblo* v. *Mantilla*, 71 D.P.R. 36 (1950).

*Procede revocar la sentencia objeto de este recurso y absolver libremente al acusado.* (⁸)

El Juez Asociado Sr. Negrón Fernández concurre con el resultado en opinión separada, con la cual está conforme el Juez Asociado Sr. Belaval.

El Juez Presidente Sr. Snyder y el Juez Asociado Sr. Marrero disienten.

---

Opinión concurrente, y en parte disidente, del Juez Asociado Sr. Negrón Fernández, en la cual concurre el Juez Asociado Sr. Belaval.

Estoy conforme con el fundamento que sirve de base a la opinión del Tribunal para revocar la sentencia en este caso. Es evidente que fué en consideración a todos los hechos que en la orden de allanamiento se atribuyen al oficial declarante—y no meramente en consideración a los consignados en su declaración jurada—que el Juez determinó la existencia de causa probable. Así lo hace constar expresamente dicho magistrado en la propia Orden cuando, después de hacer referencia a hechos que no constan en la declaración jurada, expone: ". . . y hallando esta corte que hay causa probable de que Juan Vega, en el sitio *y en la forma antes dichos*, está utilizando el material y enseres arriba mencionados, etc." (Bastardillas nuestras.) El magistrado fundó, pues, su determinación de causa probable, en una supuesta declaración jurada que nunca prestó el agente, en la cual, a su vez, la mención que se hace de boletos de bolita surge incidentalmente, como parte de la descripción de todas las operaciones de explotación de una banca clandestina, sobre

---

(⁸) Una mayoría del Tribunal, compuesta por el Juez Presidente, Sr. Snyder, por los Jueces Asociados, Sres. Marrero, Sifre, Pérez Pimentel y por el ponente, están conformes con la parte I de esta opinión. Además, una mayoría del Tribunal, compuesta por los Jueces Asociados, Sres. Negrón Fernández, Sifre, Pérez Pimentel, Belaval y por el ponente, están conformes con la parte III. En cuanto a la parte II y al escolio 7, la opinión del Tribunal es unánime. Por tanto, el Juez Presidente, Sr. Snyder, y el Juez Asociado, Sr. Marrero, opinan que la sentencia ha debido confirmarse.

lo cual nada aparece en la declaración jurada realmente prestada por el oficial de policía. La fundamental garantía contra registros y secuestros irrazonables queda vulnerada con una determinación judicial de causa probable que se funda en hechos imaginarios.

No puedo estar conforme, sin embargo, con aquella parte de la opinión del Tribunal por la que éste llega a la conclusión de que la declaración jurada que realmente prestó el oficial de policía, de no mediar la incongruencia fatal arriba apuntada, era suficiente para expedir la Orden. Para determinar si dicha declaración jurada expone causa probable para justificar la expedición de una orden de allanamiento conforme a la Sección 11 de la Carta de Derechos de nuestra Constitución(¹) y el art. 503 del Código de Enjuiciamiento Criminal,(²) debemos examinar aquélla en cuanto al único hecho en que el Fiscal de este Tribunal descansa para sostener su validez: que el oficial declaró que vió al querellado "cuando en el balcón de su residencia recibía de manos de un señor trigueño como de 35 años, delgado, alto, un paquete de boletos de bolita, en diferentes colores". Esta afirmación del oficial de policía—que los boletos del paquete que él vió en manos del acusado eran de bolita—sin descripción otra alguna de la que el Juez pudiera determinar, por sí, que en efecto eran boletos de bolita, constituye, a mi juicio, una mera conclusión suya, insuficiente para justificar la expedición de la orden.

La determinación de causa probable es función de la autoridad judicial, fundada en hechos de los cuales pueda quedar el Juez "plenamente convencido" de que hay funda-

---

(¹) "Sólo se expedirán mandamientos autorizando registros, allanamientos . . . por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación describiendo particularmente el lugar a registrarse y las . . . cosas a ocuparse."

(²) El texto, en inglés, de dicho artículo, es el siguiente: "A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person, *and particularly describing the property and the place to be searched.*" (Bastardillas nuestras.)

mento para la petición. Artículo 506, Código de Enjuiciamiento Criminal. La caracterización que el declarante hizo de los boletos tenía que basarse en hechos, o sea, en una descripción de esos boletos de la cual el Juez pudiera razonablemente concluir que eran de bolita, a distinción de otros boletos o tickets que no pertenecieran a ese juego.

No obsta, desde luego, para que una declaración jurada resulte insuficiente, el que un declarante consigne en ella sus "apreciaciones y observaciones personales relativas a hechos que un agente de la policía percibió por sus propios sentidos" —que en casos apropiados puede ser insuficiente, *Pueblo* v. *Albizu*, 77 D.P.R. 888, 896—si los hechos observados y expuestos no generan, por sí mismos, causa suficiente para el allanamiento. Hay una estimable diferencia entre las apreciaciones y observaciones relativas a hechos determinantes en sí de causa probable y las apreciaciones y observaciones relativas a hechos que no la determinan. Aquí no se trata de un objeto o artefacto—alambique, ruleta, ametralladora— cuya conformación o estructura física, por sí, pueda producir en el observador una percepción inequívoca de ese objeto o artefacto, la cual, al ser trasladada a la autoridad judicial a través de una declaración jurada, pueda requerir sólo una mera frase descriptiva, además de su nombre, para llevar al magistrado el convencimiento que la ley requiere para una válida determinación de causa probable. Aquí se trata de "un paquete de boletos de bolita en diferentes colores" que el declarante dice haber visto entregar al acusado por un señor trigueño—a quien describe, innecesariamente, con la precisión con que debió describir los boletos, y no a su portador.

Lo esencial no es, a mi juicio, si el agente de orden público obtuvo una sensación a través de la percepción visual que interpretara correctamente: lo esencial es si la garantía individual contra registros irrazonables ha quedado cumplida con las inferencias que el agente dedujo de su observación, sin que hubiera expuesto el hecho básico en que fundaba

esas inferencias. Si el declarante vió "un paquete de boletos de bolita, en diferentes colores", no puede existir justificación racional alguna para que no expresara en su declaración los *hechos* en que basaba su conclusión de que el referido "paquete" contenía *boletos de bolita*. Si el agente percibió hechos de los cuales pudo razonablemente *inferir* que el "paquete" contenía boletos de bolita, un mínimo sentido de respeto a la garantía constitucional hacía imperativo que trasladara al Juez, en su declaración jurada—para que éste por sí hiciera su propia determinación, siguiendo el mandato de la ley—los hechos observados en que fundaba su inferencia, o sea, la descripción de los papeles impresos que él caracterizó como boletos de bolita, y no meramente que le comunicara su inferencia, y nada más.

No suple la deficiencia de la declaración jurada el hecho de que este Tribunal haya tomado conocimiento judicial —*Pueblo* v. *Mantilla*, 71 D.P.R. 36—de la forma en que se juega la bolita. Pero si acudiéramos a ese conocimiento para medir la suficiencia de la declaración jurada que nos ocupa, encontraríamos que cuando se trata de *boletos impresos*, éstos contienen tres cifras *impresas*, correspondiendo generalmente el número premiado a las últimas tres cifras del premio mayor de la Lotería oficial de Puerto Rico. ¿Tenían esos boletos impresas tres cifras? ¿Cuatro? ¿Cinco? ¿Dónde en la declaración jurada aparece indicación alguna que pudiera llevar al convencimiento del Juez que expidió la Orden, al realizar su exclusiva función—no delegable en un oficial de orden público—de determinar causa probable, que eran boletos del juego prohibido de la bolita? ¿Por qué no de la Lotería oficial de Puerto Rico? ¿Por qué no de algún otro juego de lotería clandestina, de los que la ley prohibe, sin que fuera bolita?

Ni la garantía constitucional contra registros irrazonables ni la igual exigencia de determinación judicial de causa probable para ordenar un registro pueden quedar cumplidas

con esa insustancial descripción, que somete el ejercicio de la ponderada función judicial al concluyente criterio de un oficial de policía, y pone en manos de éste, con el solo respaldo de su propia inferencia, la protección del ciudadano contra la invasión arbitraria de su hogar.