EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Pueblo de Puerto Rico<br>Recurrido<br><br>v.<br><br>Richard Rolón Rodríguez<br>Peticionario | Certiorari<br><br>2015 TSPR 73<br><br>193 DPR ____ |

Número del Caso:   CC-2014-113


Fecha: 9 de junio de 2015


Tribunal de Apelaciones:

        Región Judicial de Bayamón Panel VII


Abogados de la Parte Peticionaria:

        Lcdo. Jesús Miranda Díaz
        Lcdo. Carlos Beltrán Meléndez


Oficina de la Procuradora General:

        Lcda. Margarita Mercado Echegaray
        Procuradora General

        Lcda. Lisa M. Durán Ortiz
        Procuradora General Auxiliar


Materia: Derecho Constitucional/ Procedimiento Criminal – Registros y Allanamientos; Regla 231 de Procedimiento Criminal – Suficiencia y validez de orden de allanamiento en que se omitieron los hechos y fundamentos para emitirla.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Pueblo de Puerto Rico | |
| :---: | :---: |
| Recurrido | |
| v. | CC-2014-0113 |
| Richard Rolón Rodríguez | |
| Peticionario | |

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 9 de junio de 2015.

> La garantía contra los registros y allanamientos irrazonables representa la voluntad de negarles a los gobiernos mejor intencionados, en aras de una libertad individual preciada, medios eficaces y aun aparentemente indispensables para lograr objetivos meritorios. Se estructuró precisamente ese derecho para proteger al ciudadano aun de los gobiernos democráticos más escrupulosos.[1]

En esta ocasión, nos corresponde evaluar la validez y suficiencia de una orden de allanamiento conforme a las exigencias constitucionales y estatutarias aplicables. Específicamente, nos atañe determinar el efecto de omitir en una orden de allanamiento los hechos y fundamentos que

---

[1] *Pueblo v. Lebrón*, 108 D.P.R. 324, 327-28 (1979) (Hon. José Trías Monge).

dieron base a su expedición, según éstos constan en la declaración jurada que fue prestada ante un magistrado, la cual tampoco se incluyó como anejo al momento de diligenciar la orden y llevar a cabo el allanamiento.

De esta manera, revalidamos la norma pautada por este Tribunal en casos resueltos previo a la vigencia de la Regla 231 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.231. En éstos, al amparo de disposiciones análogas del Código de Enjuiciamiento Criminal, se sostuvo que una orden de allanamiento que no expusiera los fundamentos que dieron base a su expedición resultaba insuficiente de su faz y, por tanto, activaba la protección constitucional que prohíbe el uso de evidencia ilegalmente obtenida.

**I**

Los hechos que subyacen la controversia que nos ocupa se originan en una pesquisa investigativa iniciada por la Policía de Puerto Rico. El 21 de marzo de 2013, el Sr. José L. Ramos, Agente de la División de Drogas de Vega Baja, recibió una llamada mediante la cual un confidente anónimo le informó acerca de alegadas actividades relacionadas al trasiego de sustancias controladas en una residencia de tres niveles color crema ubicada en el Barrio Galateo del Municipio de Toa Baja. El confidente anónimo indicó que, en esa residencia, un individuo conocido por el primer nombre de Richard almacenaba y distribuía sustancias controladas.

Según se desprende de la declaración jurada vertida por el agente Ramos, luego de recibir esta información, éste procedió a relatarle lo ocurrido a su supervisor, el Sargento José J. Jiménez Hernández, en aras de comenzar una investigación con relación a la confidencia recibida. El 2 de abril de 2013, luego de recibir instrucciones por parte del Sargento Jiménez, el agente Ramos se personó a las inmediaciones de la residencia en un vehículo confidencial de la Policía con un radio portátil y unos binoculares. Una vez situado en un lugar cercano a la residencia, el agente Ramos observó un automóvil marca Toyota que se detuvo frente a la residencia de tres niveles objeto de la confidencia a las 7:30 a.m.

El agente Ramos expresó en su declaración jurada que, luego de que el conductor del vehículo tocara la bocina, un individuo de tez blanca y baja estatura que vestía una camisa blanca y un mahón azul abrió unas puertas de cristal para hacerle señas al conductor. Luego de varios minutos, observó al conductor del vehículo bajarse de éste portando un bulto de color oscuro en su mano derecha. Acto seguido, el individuo de tez blanca se acercó a una verja de rejas y recibió el bulto de manos del conductor. El agente Ramos declaró que, al recibir el bulto, el individuo lo abrió y extrajo del mismo "una bolsa plástica transparente de mayor tamaño conteniendo en su interior lo que aparentaba ser picadura de marihuana". *Declaración Jurada del Agente Ramos, Apéndice*, en la pág. 22.

Luego de observar la alegada transacción, el agente Ramos se dirigió a la División de Drogas de Vega Baja para informar lo observado al Sargento Jiménez. El Sargento, por su parte, lo instruyó a escribir lo observado y a solicitar una orden de allanamiento para la residencia.

Ese mismo día, el agente Ramos prestó la declaración jurada de la que surgen los hechos que anteceden y obtuvo una orden de allanamiento expedida por el Tribunal Municipal. La orden de allanamiento disponía lo siguiente:

> Habiéndose en este día presentado prueba, por medio de declaración jurada y firmada ante mí por el AGTE. JOSÉ LUIS RAMOS ARROYO PLACA 34749 adscrito a la División Drogas, Vega Baja, Región de Bayamón, quien fue examinado por mí de que:
>
> Que el AGTE. JOSÉ LUIS RAMOS ARROYO PLACA 34749, compareció ante mí en el día de hoy 2 de abril de 2013, prestando ante mi declaración jurada número 143 sobre los hechos que fundamentan su solicitud relacionado a una residencia que más adelante se describe, la cual sustenta la determinación de causa probable para ordenar allanamiento. Este Tribunal mantiene en su expediente la declaración jurada original prestada por el AGTE. JOSÉ LUIS RAMOS ARROYO PLACA 34749.
> . . .
> La residencia a allanar es la única de tres niveles con las descripciones antes dadas, esta orden esta en busca de sustancias controladas y todo aquello que constituya violación a la ley.

Al día siguiente, el 3 de abril de 2013, se llevó a cabo el allanamiento de la residencia, en donde se ocuparon: (1) tres bolsas transparentes que contenían aproximadamente una (1) libra de marihuana; (2) 600 bolsas pequeñas de picadura de marihuana, y (3) 143 bolsas pequeñas de cocaína.

A raíz de este allanamiento, el Ministerio Público presentó dos denuncias en contra del Sr. Richard Rolón Rodríguez imputándole la posesión, con intención de distribuir, de las sustancias ocupadas. Posteriormente, el Tribunal de Primera Instancia encontró causa probable para juicio en contra del señor Rolón Rodríguez por los delitos imputados.

El 23 de septiembre de 2013, el representante legal del señor Rolón Rodríguez presentó una *Moción de supresión de evidencia* al amparo de la Regla 234 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.234. Mediante ésta, alegó que la orden de allanamiento que se le entregó al señor Rolón Rodríguez no estuvo acompañada por la declaración jurada que le sirvió de base ni contenía los motivos o fundamentos para su expedición, en clara contravención de las exigencias de la Regla 231 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.231. *Véase Moción de supresión al amparo de la Regla 234 de Procedimiento Criminal*, Apéndice, en la pág. 32. Alegó, además, que al desconocer los fundamentos que dieron base a la expedición de la orden de allanamiento, se le infringió al señor Rolón Rodríguez su derecho a un debido proceso de ley.

El 15 de octubre de 2013, el Tribunal de Primera Instancia celebró una vista para discutir la procedencia de la *Moción de supresión* presentada. En ésta, el agente que diligenció la orden, Sr. Luis D. Arocho Santiago,

testificó que la orden de allanamiento que se le entregó al imputado no estuvo acompañada por la declaración jurada que el agente Ramos prestó. *Véase Transcripción de la vista de supresión de evidencia*, *Apéndice*, en la pág. 49. Además, a preguntas de la defensa, el agente Arocho Santiago expresó que no surgían de la orden las observaciones que hizo el agente Ramos para su obtención, las cuales sirvieron de fundamento para su expedición. *Id.* en la pág. 50.

No obstante lo anterior, el Tribunal de Primera Instancia expidió una Resolución mediante la cual declaró no ha lugar la Moción presentada. Razonó que lo que "valida la legalidad de la Orden de Allanamiento es el examen que hace el magistrado de la declaración jurada que se presenta ante su consideración" y no el resumen que de ella se haga en el formulario de la orden. *Véase Apéndice*, en la pág. 114. La reconsideración en corte abierta fue denegada.

Inconforme con la determinación del foro primario, el señor Rolón Rodríguez presentó un recurso de *certiorari* ante el Tribunal de Apelaciones, reiterando que la orden de allanamiento era nula e insuficiente de su propia faz por carecer de los fundamentos que dieron base a su expedición. Luego de varios trámites procesales, incluyendo la presentación de la transcripción de la prueba oral y la comparecencia de la Procuradora General, el foro apelativo intermedio denegó revisar la resolución

recurrida. Razonó que el señor Rolón Rodríguez no logró rebatir la presunción de legalidad de la orden de allanamiento ni presentó evidencia concreta que tendiera a invalidarla. *Véase Apéndice*, en la pág. 128. Determinó, además, que surgía "inequívocamente de la Orden de Allanamiento impugnada que la declaración jurada había sido incorporada por referencia". *Id.* Así, concluyó que la resolución del Tribunal de Primera Instancia carecía de error, prejuicio o parcialidad, por lo que no era procedente intervenir para alterarla. Por estas razones, denegó la expedición del *certiorari* solicitado, determinando que no se cumplía con lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B, R. 40.

Insatisfecho con la denegatoria del Tribunal de Apelaciones, el 14 de febrero de 2014, el señor Rolón Rodríguez presentó el recurso de *certiorari* que nos ocupa. En éste, reiteró sus planteamientos ante los foros inferiores. Específicamente, señaló que el Tribunal de Apelaciones erró al confirmar el dictamen del foro primario, a pesar de que la orden de allanamiento diligenciada en su contra no cumplía con el requisito de incluir los fundamentos que dieron base a su expedición que impone la Regla 231 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 231. Por tanto, sostuvo que la orden era insuficiente de su propia faz y que procedía la supresión de la evidencia incautada al amparo de los

incisos (b) y (e) de la Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 234. Además, arguyó que era de aplicación lo resuelto por este Foro en *Pueblo v. Cintrón*, 80 D.P.R. 360 (1958), a los efectos de que el incumplimiento con ese requisito invalidaba la orden de allanamiento expedida.

El Estado, por su parte, compareció y, en esencia, sostuvo que la intervención fue razonable y que la orden de allanamiento expedida era válida al cumplir con los requisitos constitucionales pertinentes. Alegó, también, que las circunstancias particulares de este caso no ameritaban que se aplicara la regla de exclusión, puesto que no se activaba el fin disuasivo que ésta persigue. Por último, el Estado argumentó en la alternativa que, de determinarse que la orden fue en efecto insuficiente, procedería aplicar la doctrina de buena fe adoptada por el Tribunal Supremo de los Estados Unidos en *U.S. v. Leon*, 468 U.S. 897 (1984). Fundamentó este reclamo en la razonabilidad objetiva por parte de los agentes al confiar en la validez de la orden expedida por un magistrado neutral.

## II

La protección contra registros y allanamientos irrazonables por parte de los agentes estatales está consagrada en la Sección 10, Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, la cual establece lo siguiente:

> No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.
> No se interceptará la comunicación telefónica.
> Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.
> Evidencia obtenida en violación de esta sección será inadmisible en los tribunales.

Const. P.R. Art. II, Sec. 10.

Esta protección está intrínsecamente atada a otras garantías constitucionales, tal y como la inviolabilidad de la dignidad del ser humano y el derecho a la intimidad. *Véase Pueblo v. Soto Soto*, 168 D.P.R. 46, 53 (2006); E.L.A. v. Coca-Cola, 115 D.P.R. 197, 207 (1984) (señalando que la garantía persigue tres objetivos históricos: "proteger la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias e interponer la figura de un juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad en la intrusión".) Así, la precitada disposición constitucional pretende armonizar efectivamente estos derechos que fundamentan la protección con el deber del Estado de combatir y prevenir la criminalidad. *Véase id.* En virtud del equilibrio que debe hacerse entre estos intereses, la Sección 10 establece los requisitos mínimos con los que el Estado debe cumplir al momento de expedir una orden de registro y allanamiento. Además, expresamente

dispone que el incumplimiento con estos requisitos resultará en la exclusión de la evidencia obtenida por los agentes del Estado.

En el ámbito de la protección contra registros y allanamientos irrazonables por parte del Estado, nuestro texto constitucional refleja una protección más amplia que su contraparte federal. El reconocimiento expreso del derecho a la intimidad en nuestra Constitución, y la preeminencia de éste al momento de evaluar las acciones gubernamentales, permiten que el alcance de la protección contra registros y allanamientos sea mayor. *Véase* Ernesto L. Chiesa, *Derecho Procesal Penal: Etapa investigativa* 98-99 (2006) ("A mayor extensión del derecho a la intimidad, mayor protección contra registros, detenciones e incautaciones irrazonables".). En aras de examinar el presupuesto mínimo de protección que sirve como punto de partida para nuestra protección constitucional, conviene repasar los contornos normativos de la Cuarta Enmienda de la Constitución de los Estados Unidos.[2] Ésta dispone que

---

[2] Respecto a este ámbito mínimo de protección que exige la Constitución federal y su relación con las protecciones de derechos individuales contenidas en las constituciones estatales, el ex Juez Asociado del Tribunal Supremo de los Estados Unidos, William J. Brennan, ha señalado, acertadamente, que

> State constitutions, too, are a font of individual liberties, their protections often extending beyond those required by the Supreme Court's interpretation of federal law. The legal revolution which has brought federal law to the fore must not be allowed to inhibit the independent protective force of state law –for

>    The right of the people to be secure in
>    their persons, houses, papers, and effects,
>    against unreasonable searches and seizures, shall
>    not be violated, and no warrants shall issue, but
>    upon probable cause, supported by oath or
>    affirmation, and particularly describing the
>    place to be searched, and the persons or things
>    to be seized.

Const. EE.UU. Amend. IV.

Al confrontar el texto de la Cuarta Enmienda federal con la Sección 10 del Artículo II de nuestra Constitución, podemos colegir que esta última contiene tres divergencias importantes. En primer lugar, nuestra disposición constitucional prohíbe la intercepción de comunicaciones telefónicas, lo que apunta a una protección mayor del derecho a la intimidad de la ciudadanía. En segundo lugar, se exige la interposición de la autoridad judicial al momento de expedir una orden de registro y allanamiento, garantizando la imparcialidad y, por tanto, la razonabilidad de la intrusión. Además, "[e]l escrutinio estricto por un magistrado neutral de la evidencia presentada es lo que protege el interés del individuo en la intimidad de su hogar y sus posesiones de una interferencia injustificada por parte del Estado". Olga Elena Resumil, *Práctica jurídica de Puerto Rico: Derecho Procesal Penal* 277, T.I (1990). Por último, y como anticipamos, el texto de la Sección 10 provee un mecanismo para hacer valer la garantía constitucional: la exclusión

---

    without it, the full realization of our
    liberties cannot be guaranteed.

William J. Brennan, *State Constitutions and the Protection of Individual Rights*, 90 Harv. L. Rev. 489, 491 (1977).

de la evidencia obtenida en contravención al mandato constitucional. Esto es, el propio texto constitucional asegura un remedio jurídico a la ciudadanía ante posibles violaciones al derecho que éste consagra.[3]

A pesar de las divergencias textuales discutidas, es importante señalar que ambas disposiciones constitucionales responden al valor sustantivo del derecho a la intimidad y la inviolabilidad de la dignidad humana

---

[3] A nivel federal, este remedio fue adoptado jurisprudencialmente. No obstante, se ha afirmado que la exclusión de evidencia ilegalmente obtenida como remedio por violaciones a la Cuarta Enmienda, si bien no constituye un mandato constitucional, figura como un requisito procesal básico que emana de la Cuarta Enmienda. Así, en *Mapp v. Ohio*, 367 U.S. 643, 655-56 (1961) el Tribunal Supremo de los Estados Unidos extendió a los estados la regla de exclusión, determinando que éstos, al igual que el gobierno federal, estaban constitucionalmente compelidos a excluir evidencia ilegalmente obtenida:

> Therefore, in extending the substantive protections of due process to all constitutionally unreasonable searches —state or federal— it was logically and constitutionally necessary that the exclusion doctrine —an essential part of the right to privacy— be also insisted upon as an essential ingredient of the right newly recognized by the Wolf case. In short, the admission of the new constitutional right by Wolf could not consistently tolerate denial of its most important constitutional privilege, namely, the exclusion of the evidence which an accused had been forced to give by reason of the unlawful seizure. To hold otherwise is to grant the right but in reality to withhold its privilege and enjoyment.

*Mapp v. Ohio*, 367 U.S. 643, 655-56 (1961).

Para una excelente exposición con relación al desarrollo de la regla de exclusión en la jurisprudencia del Tribunal Supremo de Estados Unidos, véase Potter Stewart, *The Road to Mapp v. Ohio and Beyond: The Origins, Development and Future of the Exclusionary Rule in Search and Seizure Cases*, 83 Colum. L. Rev. 1365 (1983).

que subyace la protección contra registros y allanamientos irrazonables.[4] Además, ambas contienen exigencias de índole sustantiva y procesal análogas. El requisito de causa probable y la razonabilidad de la intrusión figuran como exigencias sustantivas. Por otro lado, el requisito de que la causa probable esté basada en juramento o afirmación, la exigencia de que la orden incluya una descripción detallada del lugar a ser allanado, las personas y cosas a registrarse y los objetos a ser ocupados y, en el caso de nuestro precepto constitucional, la interposición de un magistrado, responden a consideraciones de índole procesal que afianzan el cumplimiento con las exigencias sustantivas.[5]

Mediante estatuto, muchas jurisdicciones estatales han impuesto requisitos adicionales a la expedición y diligenciamiento de órdenes de allanamiento con el propósito de garantizar el cumplimiento con el principio básico que subyace la Cuarta Enmienda y atemperarlo con

---

[4] Para una discusión sobre los principios que informan la Cuarta Enmienda, véanse Gordon L. Mowen, II, *Closing the Door on Subjective Reasonableness: Evaluating Police-Created Exigencies and the Issues with the Doctrinal Shift to Objectivity in Warrantless Searches*, 101 Ky. L.J. 639, 669 (2013) ("The Fourth Amendment is an essential part of human dignity, privacy, and autonomy."); Alfredo García, *Toward an Integrated Vision of Criminal Procedural Rights: A Counter to Judicial and Academic Nihilism*, 77 Marq. L. Rev. 1 (1993).

[5] En atención a la importancia de estas exigencias de índole procesal como mecanismo para poner en vigor  los derechos sustantivos, el Tribunal Supremo de los Estados Unidos ha observado que "[t]he history of liberty has largely been the history of observance of procedural safeguards. And the effective administration of criminal justice hardly requires disregard of fair procedures imposed by law." McNabb v. U.S., 318 U.S. 332, 347 (1943).

las disposiciones constitucionales estatales correspondientes. *Véase* Wayne R. LaFave, *Criminal Procedure*, 2 Crim. Proc., sec. 3.4(l) (3d ed. 2014). En nuestra jurisdicción, las Reglas de Procedimiento Criminal son el vehículo mediante el cual las exigencias sustantivas y procesales fijadas por la Sección 10 del Artículo II de nuestra Constitución son satisfechas.

## III

En Puerto Rico, las Reglas 229 a la 234 de Procedimiento Criminal incorporan la prohibición constitucional en contra de registros y allanamientos irrazonables y establecen exigencias procesales adicionales que viabilizan el cumplimiento con la disposición constitucional. Por su parte, la Regla 231 de Procedimiento Criminal establece los requisitos de forma y contenido con los que debe cumplir una orden de registro y allanamiento. A esos efectos, dispone lo siguiente:

> No se librará orden de allanamiento o registro sino en virtud de declaración escrita, prestada ante un magistrado bajo juramento o afirmación, que exponga los hechos que sirvan de fundamento para librarla. Si de la declaración jurada y del examen del declarante el magistrado quedare convencido de que existe causa probable para el allanamiento o registro, librará la orden en la cual se nombrarán o describirán con particularidad la persona o el lugar a ser registrado y las cosas o propiedad a ocuparse. **La orden expresará los fundamentos habidos para expedirla, y los nombres de las personas en cuyas declaraciones juradas se basare.** Ordenará al funcionario a quien fuere dirigida registre inmediatamente a la persona o sitio que en ella se indique, en busca de la propiedad especificada, y devuelva al magistrado la orden diligenciada, junto con la propiedad ocupada. La orden dispondrá que será cumplimentada durante

las horas del día, a menos que el magistrado, por razones de necesidad y urgencia, dispusiere que se cumplimente a cualquier hora del día o de la noche.

Reglas de Procedimiento Criminal, R. 231, 34 L.P.R.A. Ap. II, R. 231 (énfasis nuestro).

Como se desprende de la precitada regla, una orden de allanamiento deberá contener una expresión de los fundamentos habidos para su expedición según éstos surgen de las declaraciones prestadas ante el magistrado que expidió la orden. Este requisito procesal garantiza que de la propia orden surja la causa probable que dio base a su expedición y evita que se pueda llevar a cabo un allanamiento sin apercibir a un ciudadano de las razones que motivaron éste.

Este Tribunal ha resuelto que, para ser válida, una orden de allanamiento deberá incluir los fundamentos específicos que dieron base a su expedición. Así, en *Pueblo v. Rivera de Jesús*, 79 D.P.R. 742 (1956), al amparo del Artículo 507 del Código de Enjuiciamiento Criminal entonces vigente, se estableció que incluir fundamentos distintos a los contenidos en la declaración jurada, y que no tenían el apoyo de ningún juramento o afirmación, invalidaban la orden de allanamiento. *Id.* en la pág. 752. [6]

---

[6] El requisito del Artículo 507 del Código de Enjuiciamiento Civil era virtualmente idéntico al requisito que impone la actual Regla 231 de Procedimiento Criminal. Incluso, nuestra Regla 231 proviene de las secciones 1525 a la 1529 del Código de Enjuiciamiento Criminal de California, cuya sección 1529, al igual que el derogado Artículo 507, provee un modelo del formato de una

Al invalidar la orden en cuestión, se estableció con meridiana claridad que para ser válida, una orden de registro y allanamiento siempre deberá incluir los fundamentos de la petición. *Id.*

De otra parte, en *Pueblo v. Cintrón*, 80 D.P.R. 360 (1958), este Tribunal determinó que la omisión en una orden de allanamiento de las razones o motivos fundados que dieron base a su expedición no podía ser subsanada acompañando la orden con la declaración jurada que contenía dichos fundamentos. En *Pueblo v. Cintrón*, se examinó nuevamente el requisito dispuesto en el Artículo 507 del Código de Enjuiciamiento Criminal, el cual ordenaba la inserción en la orden de allanamiento de los fundamentos de la petición en aras de hacer constar en ésta que hubo causa probable para expedirla. Conforme a lo decidido en *Pueblo v. Rivera de Jesús*, este Tribunal determinó que, si bien no era necesario transcribir *verbatim* los fundamentos contenidos en la declaración jurada, era necesario que "en la orden se expres[aran] sustancialmente los hechos materiales expuestos en la declaración jurada, sintetizándolos de modo que se haga constar allí cuáles son 'los fundamentos de la petición'". *Pueblo v. Cintrón*, 80 D.P.R. 360, 363 (1958)(*citando a Pueblo v. Rivera de Jesús*, 79 D.P.R. 742, 752-753

---

orden de allanamiento en el que también se exige un resumen de los fundamentos que dieron base a su expedición. *Véase* Cal. Penal Code § 1529.

(1956); *Pueblo v. Hernández*, 75 D.P.R. 907, 913 (1954)). Además, se indicó que adherir la declaración jurada a la orden de allanamiento no eximía al magistrado de la obligación de consignar en la orden los fundamentos que dieron base a su expedición, según lo exigía el Artículo 507. En *Pueblo v. Cintrón*, este Tribunal concluyó que una orden de allanamiento que contenía un resumen de los fundamentos contenidos en la declaración jurada cumplía con lo dispuesto en el Artículo 507 del Código de Enjuiciamiento Criminal entonces vigente.

A pesar de que este Tribunal no ha tenido oportunidades ulteriores de interpretar este requisito estatutario de entronque constitucional, en *Pueblo v. Camilo Meléndez*, 148 D.P.R. 539, 553 (1999), al discutir de manera general el contenido de una orden de registro y allanamiento afirmamos que "[u]na vez expedida, ésta debe describir con particularidad o nombrar a la persona o lugar que será registrado y los objetos que han de ocuparse. Se exige, además, que la orden exprese los fundamentos que la sustentan y los nombres de las personas en cuyas declaraciones juradas se basa". *Id.*

Al armonizar la regla de exclusión con los requisitos establecidos en la Regla 231 de Procedimiento Criminal, es forzoso concluir que evidencia obtenida mediante una orden de registro y allanamiento que no se ciña a estos

requisitos hará nula la orden diligenciada.[7] Es decir, una orden de registro y allanamiento que no contenga los fundamentos que dieron base a su expedición, o un resumen de éstos, será insuficiente de su propia faz, aun si ésta se acompaña de la declaración jurada que los contenga. Tal y como se indicó en *Pueblo v. Cintrón*, 80 D.P.R. 360, 364 (1958), "el único efecto de adherir a la orden de allanamiento una copia verbatim de la declaración jurada que le sirve de base, es proteger aún más el derecho contra registros ilegales." *Id.* Consiguientemente, la evidencia incautada mediante ésta habrá sido obtenida ilegalmente, lo que activará la regla de exclusión. *Véase* Olga Elena Resumil, *Práctica Jurídica de Puerto Rico: Derecho Procesal Penal* 296, T.I (1990).

**IV**

La regla de exclusión consagrada en la Sección 10 del Artículo II de nuestra Constitución persigue, ante todo, evitar que el Estado se beneficie de sus propios actos ilegales al momento de encausar criminalmente a un ciudadano. Por tanto, provee un remedio efectivo, de rango constitucional, para vindicar posibles violaciones al mandato constitucional contra registros y allanamientos irrazonables. La regla, por tanto, procura disuadir esas actuaciones ilegales por parte de los agentes estatales y colocar a los tribunales en posición de dirimir controversias que requieran analizar la razonabilidad de

---

[7] *Véase* Dora Nevares Muñiz, *Sumario de Derecho Procesal Penal Puertorriqueño* 82 (10ma ed. 2014).

la intrusión al momento de implantar la regla de exclusión. Esto, a la vez, promueve que los tribunales preserven su legitimidad e integridad y excluyan evidencia que se aparte de los requisitos constitucionales y estatutarios que deben observarse al expedir y diligenciar una orden de allanamiento. *Véanse* Ernesto Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos 284-85, Vol. I (1991); *Pueblo v. Blase Vázquez*, 148 D.P.R. 618, 629 (1999) (discutiendo los propósitos de la regla de exclusión).

La Regla 234 de Procedimiento Criminal es el estatuto que instrumenta el mandato constitucional de exclusión de evidencia ilegalmente obtenida en nuestro ordenamiento procesal penal. Así, dispone que una persona agraviada por un allanamiento o registro ilegal podrá solicitar la supresión de la evidencia obtenida mediante éste por cualquiera de los siguientes fundamentos:

> (a) Que la propiedad fue ilegalmente ocupada sin orden de allanamiento o registro.
> **(b) Que la orden de allanamiento o registro es insuficiente de su propia faz.**
> (c) Que la propiedad ocupada o la persona o sitio registrado no corresponde a la descripción hecha en la orden de allanamiento o registro.
> (d) Que no había causa probable para creer en la existencia de los fundamentos en que se basó la orden de allanamiento o registro.
> (e) Que la orden de allanamiento fue librada o cumplimentada ilegalmente.
> (f) Que es insuficiente cualquier declaración jurada que sirvió de base a la expedición de la orden de allanamiento porque lo afirmado bajo juramento en la declaración es falso, total o parcialmente.

Reglas de Procedimiento Criminal, R. 234, 34 L.P.R.A. Ap. II, R. 234 (énfasis nuestro).

Según se desprende del inciso (b) de la Regla, un fundamento para la supresión de evidencia es que la orden de registro y allanamiento sea insuficiente de su propia faz. Como anticipamos, una orden que carece de los fundamentos que dieron base a su expedición es insuficiente de su propia faz, por lo que la parte agraviada podrá solicitar la supresión de la evidencia obtenida mediante ésta al amparo de la Regla 234 de Procedimiento Criminal.

Reiteradamente hemos determinado que una moción de supresión de evidencia al amparo de la Regla 234 de Procedimiento Criminal no debe meramente aludir al inciso aplicable, sino que el promovente deberá expresar con especificidad y precisión los hechos en los que se basa su petición. *Véanse Pueblo v. Serrano Reyes*, 176 D.P.R. 437 (2009); *Pueblo v. Hernández González*, 175 D.P.R. 274, 311 (2009); *Pueblo v. Blase Vázquez*, 148 D.P.R. 618 (1999); *Pueblo v. Maldonado*, 135 D.P.R. 563 (1994). Cuando un tribunal declara con lugar la moción de supresión presentada, la evidencia obtenida ilegalmente, conforme al mandato constitucional de la Sección 10 del Artículo II, será suprimida como prueba de cargo. Por otro lado, cuando un tribunal declara sin lugar una moción de supresión al amparo de la Regla 234, el acusado tendrá como opción solicitar la revisión de la resolución mediante un recurso de *certiorari*.

## V

En el caso que nos ocupa, se desprende palmariamente de la orden de registro y allanamiento expedida que ésta no incluye los fundamentos que dieron base a su expedición. Así lo reconoció el agente Arocho en el testimonio vertido ante el Tribunal de Primera Instancia mediante el cual reconoció, además, que la orden entregada al señor Rolón Rodríguez no estaba acompañada por la declaración jurada prestada por el agente Ramos. *Véase Apéndice*, en las págs. 49-51.[8] Esta omisión claramente invalida la orden de allanamiento expedida, al hacer de ésta una insuficiente de su propia faz. El incumplimiento manifiesto con el requisito estatutario que impone la Regla 231 de las Reglas de Procedimiento Criminal, el cual, como hemos visto, responde a la garantía constitucional en contra de registros y allanamientos irrazonables consagrada en nuestra Constitución, activa la regla de exclusión. En virtud del inciso (b) de la Regla

---

[8] En su testimonio, el agente Arocho también indicó que todas las órdenes que ha diligenciado en circunstancias similares carecen de las observaciones realizadas por los agentes para asegurar su obtención. *Véase Apéndice*, en la pág. 51. Esta afirmación hace aún más imperativa nuestra intervención en pos de garantizar, en lo sucesivo, el cabal cumplimiento con los requisitos dispuestos en la Regla 231 de Procedimiento Criminal. Cabe señalar, además, que las *Normas y procedimientos internos para el trámite y diligenciamiento de citaciones, órdenes de arresto, registros y allanamientos, Orden general Núm. 98-16*, Policía de Puerto Rico, transcriben las Reglas de Procedimiento Criminal aplicables, incluyendo los requisitos dispuestos en la Regla 231. La *Orden general*, por tanto, apercibe a los agentes de la nulidad de aquellas órdenes que no contengan los fundamentos que dieron base a su expedición.

234 de Procedimiento Criminal la insuficiencia de la orden de allanamiento diligenciada en contra del señor Rolón Rodríguez sirve como fundamento para solicitar la supresión de la evidencia incautada. Debemos recordar que "una vez ciertos derechos son incorporados al procedimiento criminal éstos se convierten en parte integral del debido proceso de ley y, por lo tanto, adquieren una categoría cuasi constitucional". *Pueblo v. Figueroa Agosto*, 171 D.P.R. 203, 209-10 (2007. *Véanse*, *además Pueblo v. Vega*, 148 D.P.R. 980 (1999); *Pueblo v. Ortiz Couvertier*, 132 D.P.R. 883 (1993); *Pueblo v. Prieto Maysonet*, 103 D.P.R. 102 (1974); *Pueblo v. Serbiá*, 78 D.P.R. 788 (1955). El requisito que impone la Regla 231 de Procedimiento Criminal no constituye una mera formalidad excusable, sino parte esencial del derecho de un ciudadano a un debido proceso de ley.

En el presente caso, es forzoso concluir que no estamos ante "un simple error de forma o inadvertencia"[9] como arguye el Estado, sino ante una omisión que invalida absolutamente la orden de registro y allanamiento expedida en contra del señor Rolón Rodríguez. Afirmar lo contrario conllevaría ignorar el mandato constitucional y las disposiciones contenidas en los estatutos que lo instrumentan. La sola mención de la declaración jurada en la orden expedida no subsana este defecto pues no constituye, bajo ningún concepto, una "incorporación por

---

[9] *Alegato del Pueblo recurrido*, en la pág. 3.

referencia" de los fundamentos vertidos en ésta; máxime cuando la orden no estuvo acompañada por la propia declaración. *Véase Alegato del Pueblo recurrido*, en la pág. 16.[10]

Por último, es preciso señalar que la inclusión de la frase "todo aquello que constituya violación a la ley" en la orden de allanamiento expedida carece de todo valor legal. En el pasado, este Tribunal ha determinado que "[n]o procede librarse órdenes de allanamiento con tal superfluo aditamento que nada señala en particular". *Valentín v. Tribunal Superior*, 91 D.P.R. 805, 813 (1965). A pesar de que en este caso no es esta frase la que invalida la orden de allanamiento expedida, conviene

---

[10] Tampoco procede, según nos solicita el Estado, aplicar la doctrina de buena fe, bajo el pretexto de que el agente "actuó bajo un marco de objetiva razonabilidad (y de buena fe) cuando confió en la autoridad general que le confería la orden de allanamiento". *Alegato del Pueblo recurrido*, en la pág. 16. Al invocar esta doctrina, el Estado se ampara en la excepción a la regla de exclusión de evidencia ilegalmente obtenida acotada por el Tribunal Supremo de los Estados Unidos en *U.S. v. Leon*, 468 U.S. 897 (1984), conocida como la doctrina de buena fe. Cabe señalar que, en *U.S. v. Leon*, empleando un análisis de los costos y beneficios de la regla de exclusión, el Tribunal Supremo procuró delimitar el alcance de esta excepción. De esta manera, aclaró que la doctrina de buena fe no sería de aplicación en instancias en las que: (1) el agente objetivamente no hubiese podido confiar de buena fe en la validez de la orden; (2) el agente tenga conocimiento de la falsedad de las declaraciones que dieron base a la determinación de causa probable para expedir la orden; (3) la ausencia de causa probable sea patente, y (4) la nulidad de la orden surja de su propia faz. *Véase Leon*, 468 U.S. en las págs. 922-23. Dado que en el caso que nos ocupa la insuficiencia de la orden de allanamiento diligenciada se desprende de su propia faz, estimamos que los argumentos del Estado son inmeritorios, puesto que la doctrina es claramente inaplicable a los hechos que nos ocupan.

recordar al Estado que la inclusión de ésta "constituye una peligrosa coletilla que puede tomarse como pretexto o excusa para que se interpreten extensivamente los términos y alcance de la orden, violándose así imperativos preceptos constitucionales y estatutarios". *Id. Véase, además Pueblo v. Yulfo*, 71 D.P.R. 820, 822 (1950).

Como hemos visto, la regla de exclusión viabiliza la consecución de un valor fundamental en nuestro ordenamiento constitucional: que las actuaciones del Estado estén circunscritas a las garantías constitucionales que la Carta de Derechos reconoce a los ciudadanos. Como corolario de este valor, este Tribunal, como último intérprete de la Constitución y máximo garante de los derechos consagrados en ésta, no puede condonar actuaciones estatales que transgredan esos derechos.[11] Por el contrario, corresponde a este Foro articular el contenido de estas garantías y asegurar que, bajo ninguna circunstancia, su violación permanezca impune. Claudicar a esta responsabilidad, no sólo atentaría contra la integridad judicial y la legitimidad de nuestra función adjudicativa, sino que, además, le restaría credibilidad a las garantías constitucionales que amparan a nuestra

---

[11] Con relación a la revisión judicial de actuaciones inconstitucionales del Estado, el Tribunal Supremo de los Estados Unidos, en el contexto de una violación a la Cuarta Enmienda, ha afirmado que "[t]o sanction such proceedings would be to affirm by judicial decision a manifest neglect if not an open defiance of the prohibitions of the Constitution, intended for the protection of the people against such unauthorized action." *Weeks v. United States*, 232 U.S. 383, 394 (1914).

ciudadanía. En atención a esta responsabilidad y a los requisitos estatutarios de entronque constitucional contenidos en la Regla 231 de las Reglas de Procedimiento Criminal, concluimos que una orden de allanamiento que carezca de los fundamentos que dieron base a su expedición es insuficiente de su propia faz y, por consiguiente, la evidencia obtenida mediante ésta no será admisible en los tribunales.

De esta manera, revalidamos esa "exigencia áspera y puntillosa de que se observen todos los requisitos procesales que comporta la intervención judicial en los registros y allanamientos". *Pueblo v. Rivera de Jesús*, 79 D.P.R. 742, 755 (1956). Exigir la observancia cabal con estos requisitos representa nuestro compromiso con la protección de los derechos individuales que consagra nuestra Constitución. Consecuentemente, nos reafirmamos en que

> En verdad no hay otro modo de dejar la libertad individual garantida institucionalmente frente a posibles transgresiones del poder público. Todo esto, como se ha dicho con razón, no por blandura o ternura hacia el delincuente, sino para resguardar la concepción de la justicia y de la dignidad absoluta de la persona humana, índice del grado de civilización que hemos alcanzado.

*Id.*

**VI**

Por los fundamentos que anteceden, se revoca el dictamen del Tribunal de Primera Instancia mediante el cual denegó la *Moción de supresión de evidencia* presentada. Entendemos que el foro primario erró al

concluir que la Regla 231 de Procedimiento Criminal no requiere que se especifiquen los fundamentos que dieron base a la expedición de la orden de registro y allanamiento. Ante la negativa del Tribunal de Apelaciones de atender el recurso de *certiorari* que le fue presentado, ordenamos la continuación de los procedimientos en el Tribunal de Primera Instancia conforme a lo aquí resuelto. Consiguientemente, la evidencia obtenida mediante el registro no podrá ser utilizada como prueba de cargo en un juicio en contra del señor Rolón Rodríguez. Su utilización, sin duda, contravendría el mandato constitucional que supone la regla de exclusión y las disposiciones contenidas en las Reglas 231 y 234 de las Reglas de Procedimiento Criminal.

Se dictará sentencia de conformidad.


                                        Anabelle Rodríguez Rodríguez
                                                Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Richard Rolón Rodríguez<br><br>Peticionario | CC-2014-0113 |

SENTENCIA

San Juan, Puerto Rico, a 9 de junio de 2015

Por los fundamentos que anteceden, se revoca el dictamen del Tribunal de Primera Instancia mediante el cual denegó la *Moción de supresión de evidencia* presentada. Entendemos que el foro primario erró al concluir que la Regla 231 de Procedimiento Criminal no requiere que se especifiquen los fundamentos que dieron base a la expedición de la orden de registro y allanamiento. Ante la negativa del Tribunal de Apelaciones de atender el recurso de *certiorari* que le fue presentado, ordenamos la continuación de los procedimientos en el Tribunal de Primera Instancia conforme a lo aquí resuelto. Consiguientemente, la evidencia obtenida mediante el registro no podrá ser utilizada como prueba de cargo en un juicio en contra del señor Rolón Rodríguez. Su utilización, sin duda, contravendría el mandato constitucional que supone la regla de exclusión y las disposiciones contenidas en las Reglas 231 y 234 de las Reglas de Procedimiento Criminal.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco hace constar la siguiente expresión:

La Jueza Asociada señora Pabón Charneco vota conforme con la Opinión que antecede. En ocasiones anteriores, este Tribunal atendió casos en los que aplicaba la Regla 231 de Procedimiento Criminal, 34 LPRA Ap. II, y se expresó en cuanto a los efectos de omitir en una Orden de Registro los fundamentos que dieron base a su expedición. Así, en *Pueblo v. Camilo Meléndez*, 148 DPR 539 (1999), hicimos referencia a la Regla 231 de Procedimiento Criminal y expresamos que nuestro ordenamiento exige "que la orden *exprese los fundamentos que la*

*sustentan* y los nombres de las personas en cuyas declaraciones juradas se basa". *Id*. pág. 553. (Énfasis suplido).

Sin embargo, considera que ante el testimonio de uno de los agentes del orden público involucrado en el caso de autos, quien indicó que todas las órdenes de registro que ha diligenciado han sido idénticas a la orden ilegal que hoy invalidamos, amerita que este Tribunal *reitere* que la omisión de los fundamentos que dieron paso a la expedición de una Orden de Registro tiene el efecto de invalidar el registro y, por consiguiente, activar la Regla de Exclusión de la Sección 10 del Artículo II de la Constitución de Puerto Rico. Por lo tanto, al igual que se hizo en *Soto Pino v. Uno Radio Group*, 189 DPR 84 (2013), está conforme con que se reitere esta norma a través de una Opinión del Tribunal.

El Juez Asociado señor Rivera García no intervino.


Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo